Vincent **MILONE**, Plaintiff, Appellant,

v.

**MOCERI FAMILY, INC.,**
Defendant, Appellee.

No. 87–1528.

United States Court of Appeals,
First Circuit.

Heard April 4, 1988.

Decided May 31, 1988.

---

Joseph M. Orlando with whom Orlando & Associates, Gloucester, Mass., was on brief, for plaintiff, appellant.

Thomas E. Clinton with whom Clinton & Muzyka, P.C., Boston, Mass., was on brief, for defendant, appellee.

Before COFFIN, BREYER and SELYA, Circuit Judges.

SELYA, Circuit Judge.

This maritime tort suit, in its ebb and flow, illustrates yet again that "the seaman's story is [one] of tempest." *Clauson v. Smith*, 823 F.2d 660, 661 (1st Cir.1987) (quoting Sextus Propertius).

I

Plaintiff-appellant Vincent Milone claimed to have injured his right knee on February 20, 1985 while employed aboard the F/V ANDROMEDA. He sued the vessel's owner, Moceri Family, Inc. (MFI), in federal district court. Milone's complaint contained three counts: unseaworthiness (Count 1); negligence under the Jones Act, 46 U.S.C.App. § 688 (1982) (Count 2); and maintenance and cure (Count 3). MFI denied that it was guilty of negligence or that the ANDROMEDA was unseaworthy. It also disputed that plaintiff had been harmed in February of 1985, tracing Milone's complaints to a non-work-related event which occurred over a year earlier. In MFI's view, the surgery performed in April 1985 and all of the associated symptomatology and treatment flowed from the preexisting injury.

The case was tried to a jury, which answered special interrogatories. The jury reported its verdict in open court as follows:

THE CLERK: Mr. Foreman, members of the jury, listen to the verdict as the Court records it.

Question 1: Was there an event on the ANDROMEDA on or about February 20, 1985, which injured plaintiff Vincent Milone's right knee or aggravated a pre-existing injury to that knee?

Answer: Yes.

Question 2(a): On or about February 20th, 1985, was the winch operator of the ANDROMEDA negligent, and, if so, was that negligence a cause of the harm to plaintiff Vincent Milone's right knee?

Answer: Yes.

Question 2(b): Was the defendant Moceri Family Inc. negligent using wire on the winch head of the ANDROMEDA and, if so, was the negligence a cause of the harm to plaintiff Vincent Milone's right knee on or about February 20th, 1985?

Answer: No.

Question 3: Was the ANDROMEDA unseaworthy because wire was used on the winch head and, if so, was that unseaworthiness a proximate cause of the harm to Vincent Milone's right knee on or about February 20th, 1985?

Answer: No.

Question 4(a): What amount, if any, is required to compensate plaintiff Vincent Milone fairly and reasonably for his damages?

Answer: $29,000.

Question 4(b): Do you award the plaintiff Vincent Milone prejudgment interest?

Answer: No.

The court thereupon entered judgment for plaintiff on Counts 2 and 3, and in defendant's favor on the first count (unseaworthiness). Milone, disappointed by the size of the award, moved for a new trial limited to the issue of damages on Count 2 (the Jones Act claim). After entertaining argument, the district judge denied the motion from the bench. This appeal challenges only the refusal to grant the limited new trial.

## II

We restate briefly the tenets which govern appellate oversight of new trial motions in civil cases. In the federal system, a trial judge cannot displace a jury's verdict merely because he disagrees with it or would have found otherwise in a bench trial. Absent error of law (and we see none here), the judge's prerogative to set aside a verdict crystallizes only if "it is quite clear that the jury has reached a seriously erroneous result." *Borras v. Sea–Land Service, Inc.*, 586 F.2d 881, 887 (1st Cir.1978) (citation omitted). In our litany of cases, we have come to refer to this criterion as the "manifest miscarriage of justice" standard. *E.g., Wagenmann v. Adams*, 829 F.2d 196, 200–01 (1st Cir.1987); *Insurance Co. of North America v. Musa*, 785 F.2d 370, 375 (1st Cir.1986); *Valm v. Hercules Fish Products, Inc.*, 701 F.2d 235, 237 (1st Cir.1983); *Hubbard v. Faros Fisheries, Inc.*, 626 F.2d 196, 200 (1st Cir. 1980). We review a district court's application of the standard solely for abuse of discretion. *See Real v. Hogan*, 828 F.2d 58, 61 (1st Cir.1987).

Where, as here, an appellant contests the insufficiency or excessiveness of a jury's award of damages in a personal injury case, he bears a particularly heavy burden. As we have said: "Translating legal damage into money damages—especially in cases which involve few significant items of measurable economic loss—is a matter peculiarly within a jury's ken." *Wagenmann*, 829 F.2d at 215. For just this reason, "[w]e rarely will override the jury's judgment on the appropriate amount of damages to be awarded." *Brown v. Freedman Baking Co.*, 810 F.2d 6, 11 (1st Cir. 1987). The jury, as we see it, is free to run the whole gamut of euphonious notes—to harmonize the verdict at the highest or lowest points for which there is a sound evidentiary predicate, or anywhere in between—so long as the end result does not violate the conscience of the court or strike such a dissonant chord that justice would be denied were the judgment permitted to stand. *See Wagenmann*, 829 F.2d at 215; *Segal v. Gilbert Color Systems*, 746 F.2d 78, 80–81 (1st Cir.1984); *McDonald v. Federal Laboratories*, 724 F.2d 243, 246 (1st Cir.1984). In other words, if—after scanning the evidence in the light most congenial to the nonmovant, *Wagenmann*, 829 F.2d at 215—the verdict does not exceed or fall below "any rational appraisal or estimate of the damages that could be based on the evidence before the jury," *Segal,*

746 F.2d at 81 (citation omitted), it should be validated.

With this panorama in mind, we turn to the circumstances at bar.

### III

The linchpin of appellant's dissertation is a trial stipulation entered into by the parties to save the jury from computational effort. Under the terms of that stipulation, the parties agreed that, if plaintiff was entitled to recover past lost wages in consequence of his injury, the wages amounted to $29,000, net of taxes. Plaintiff portrays the scenario thusly: since the jurors, having found negligence and harm, were bound to award $29,000 for past earnings, and since they awarded only this amount, then it is evident that they ignored his pain, suffering, and other claimed non-economic losses entirely.[1] This makes it likely, plaintiff says, that the jurors became confused and treated the $29,000 verdict "floor" as a "ceiling," or simply ignored the evidence and the judge's instructions. Either way, he claims that he deserves a new trial.

The answer to the conundrum, we think, is not so easily to be constructed. Rather, the solution lies mainly in the court's charge. With respect to Count 2, the venire was told in relevant part:

1. Liability exists "if the plaintiff proves by a preponderance of the evidence that the defendant's negligence ... played any part, however small, in bringing about the injury to ... the right knee or an aggravation of pre-existing injury to the right knee."

2. If "any proven negligence caused or contributed to the harm of the plaintiff's right knee, even to the slightest degree,

then you must find for the plaintiff on the issue of negligence."

3. Do not "award the plaintiff any damages ... for the amount he has suffered by virtue of a pre-existing injury or the amount you find he would suffer in the future due to a pre-existing injury.... [I]f you find that he had a pre-existing injury and it was bound to worsen anyway, don't award any damages in the amount that it would have worsened anyway. The concept is that, if you reach the issue of damages, you are to award damages for the harm proven to be caused by the defendant."

4. As to damages, they "are intended to be compensatory.... They have to be actual damages, not speculative damages. And the concept is, if you reach damages, to determine what amount, if any, is necessary to make the plaintiff whole. What amount is necessary to make him as well off as he would have been if the alleged accident had never occurred."

5. As to past lost wages, "if you reach the issue of damages, then you will get to the point where the stipulation regarding past lost earnings is relevant. The parties, by that stipulation, of course, do not agree, particularly the defendant does not agree, that the plaintiff is entitled to recover any damages. But if you ... decide he is entitled to some damages, your award should include the $29,000 for past lost wages and anything else you find established by the evidence. You should not leave that $29,000 amount out because [of the stipulation]."

Plaintiff, despite his evident unhappiness with the niggardly verdict, assigns no error to the instructions and preserved no objections to them. On their face, the charge

---

1. The jury was told that in measuring damages it could consider—though not necessarily accept—such potential "intangibles" as "physical pain and suffering [including] any physical disability, impairment and inconvenience resulting from the plaintiff's injuries upon the normal pursuits and pleasures of life [and also including] any anxiety, humiliation, embarrassment, and any feelings of economic insecurity caused by the disability, and loss of enjoyment of life." The jury was also told not to formulate a figure

for medical and hospital expenses; if plaintiff injured his right knee in the shipboard incident, maintenance and cure would attach (and the bills would be paid whether or not there was negligence, and whether the injury was a new one or an aggravation of an old one). Thus, the verdict on the Jones Act count—with which we are exclusively concerned—should have included no "out-of-pocket" expenses other than lost wages.

excerpts quoted above are not patently wrong. They have become, therefore, the law of the case. *Murphy v. Dyer*, 409 F.2d 747, 748 (10th Cir.1969). *See generally* Fed.R.Civ.P. 51; *McGrath v. Spirito*, 733 F.2d 967, 968–69 (1st Cir.1984).

## IV

Because the jury awarded Milone only the amount of the stipulated lost wages— no more, no less—he asserts that the verdict was too paltry and that the district court should have ordered a new trial on damages. He exhorts us to apply what he terms a "per se rule" to reach this result. Alternatively, he argues that, per se rule or no, the interests of justice require that we set the verdict aside. We examine these contentions seriatim.

■ A. *The per se rule.* Appellant's formulation of the per se rule seems to be as follows: "Where a personal injury award reflects the exact amount of a plaintiff's out-of-pocket losses, the verdict establishes on its face that the jury failed and refused to award compensation for pain and suffering and for ... disability, and refusal of a trial court to grant a new trial amounts to an abuse of discretion." Appellant's Brief at 10.[2] We doubt the acceptance of the rule elsewhere, and categorically refuse to adopt it in this circuit.

Milone cites a quintet of cases which he says invoke the per se rule, Appellant's Brief at 11, along with a decision of this court where the "principles [of the per se rule] were recognized, although not applied...." *Id.* Charitably put, as we show in the margin, four of the five "supporting" cases simply cannot be read to bulwark the asserted proposition.[3] The fifth, *Brown v. Richard H. Wacholz, Inc.*, 467 F.2d 18 (10th Cir.1972), appears to adopt the rule, but limits it to circumstances where the jury, in refusing to award damages for, say, pain and suffering, "has failed to give effect to the instructions" and/or has "disregarded the evidence." *Id.* at 21.[4] *Brown* was a diversity case applying state law. As the panel wrote:

"Under applicable Colorado law the jury's authority does not include limiting the award to actual medical expenses where the undisputed evidence establishes both pain and suffering and permanent disability."

*Id.* at 20 (citing, inter alia, *Kistler v. Halsey*, 173 Colo. 540, 481 P.2d 722 (1971)). The case at bar is not one which depends upon a state rule of decision, and we decline to import so mechanical a precedent into federal law.

The First Circuit case upon which appellant leans in hawking the per se rule is *Rodrigues v. Ripley Indus.*, 507 F.2d 782 (1st Cir.1974). Milone's reliance is misplaced. We referred to the per se rule only in the course of summarizing plaintiff's contentions, *id.* at 785, and neither endorsed the proposition nor presumed to apply it. Quite to the contrary, we let the jury's award stand, ruling that the dollar amount was not shockingly low and, therefore, "[i]t was not a manifest abuse of discretion not to order a new trial...." *Id.* at 786.

---

2. Milone would apparently extend the reach of the desired rule to situations where, though the match was not exact, the jury's damage award "closely approximate[d]" the aggregate out-of-pocket losses. Appellant's Brief at 11; Appellant's Reply Brief at 18.

3. *Wheatley v. Beetar*, 637 F.2d 863 (2d Cir.1980), stands not for a per se rule, but for the application of traditional Rule 59 principles. The Second Circuit, without any formulary incantations, held that a $1 plaintiff's verdict was "so disproportionately inadequate that to permit it to stand would amount to a clear denial of justice." *Id.* at 867. The opinion in *Darbrow v. McDade*, 255 F.2d 610 (3d Cir.1958), recounts summarily that a new trial had been granted following a jury verdict in the amount of the medical expenses, *id.* at 611, but offers no insight beyond this passing reference. The last two cases, *McCoy v. Wean United, Inc.*, 67 F.R.D. 495 (E.D.Tenn.1975), and *Ries v. Sanders*, 34 F.R.D. 468 (N.D.Miss.1964), are equally unhelpful. They appear to be garden-variety Rule 59 cases where trial judges determined jury verdicts to be grossly inadequate. In neither instance was the verdict in the exact amount of the out-of-pocket expenses, nor did it closely approximate that amount.

4. Those qualifiers do not obtain in this case, *see infra* Part IV(B), so *Brown* would be distinguishable in any event.

Personal injury cases, by their very nature, are fact-specific. The range of allowable variation is great. The jury, first and foremost, is the proper arbiter of damages in such cases. If jurors depart on a flight of fancy, the district court, "from its observation post on the front lines," *Wagenmann*, 829 F.2d at 216, supplies the principal check and balance to ensure that the verdict returned "fits within the wide range of arguable appropriateness." *Id.* We see nothing to be gained—and much to be lost—by placing the trial bench in the sort of universal straitjacket envisioned by the per se rule. Accordingly, we decline plaintiff's invitation that we embrace so mischievous a heuristic.

■ B. *Inadequacy of the verdict.* Rejection of the per se rule brings us full circle: we are left with the necessity of determining whether the district judge abused his discretion in failing to categorize the $29,000 verdict as a manifest miscarriage of justice. We hold that he *did* not.

We look briefly at what confronted the factfinders. There was evidence in the record that, over a year before the shipboard incident, plaintiff visited a clinic in Gloucester, Massachusetts complaining of severe pain in his right knee. He attributed the problem to some (overly energetic) dancing on New Year's Eve. Record Appendix (R.A.) 368, 373. Dr. Robert L. Jedrey, the physician who examined him, reported a question of ligament or cartilage injury to the knee. *Id.* at 373. The next day (January 3, 1984), plaintiff was seen by Dr. Mordecai E. Berkowitz, who noted that Milone had sustained a "[p]ossible torn medial meniscus." *Id.* at 392. Moving ahead some thirteen months to the time of the shipboard incident, the record indicates

that Milone manifested no immediate signs of serious injury. He continued working. In due course, he was again seen by Dr. Berkowitz. On March 21, 1985, Dr. Berkowitz noted "medial pain in his knee over the medial collateral ligament ... [which] has been going on *for the past year,....*" *Id.* (emphasis supplied). When plaintiff was hospitalized for surgery in the spring of 1985, the record reflected that

> patient injured his right knee in January, 1984. Subsequently he has continued to have pain in the knee with signs and symptoms of an internal derangement. He ... has had findings very strongly suggestive of torn medial meniscus without any associated ligament injury. He was unable to ... work because of the severity of his pain and therefore is admitted.

R.A. 418.

At trial, appellant's expert witness, Dr. John J. McGillicuddy, acknowledged that the injury for which suit had been brought was a tear of the medial meniscus in the right knee. R.A. 146. Though Dr. McGillicuddy strove mightily to minimize the correlation between the plaintiff's terpsichorean exploits and his treatment and surgery in 1985, defendant's trial expert, Dr. Robert Shapiro, testified flatly that, in his opinion, Milone's symptomatology in and after 1985 "was not related to this alleged [shipboard] accident." R.A. 195. Instead, Dr. Shapiro tied plaintiff's condition to the New Year's Eve injury, going so far as to state: "I find that it is really impossible to blame a torn cartilage on the way that he was actually hurt [on February 20, 1985]." R.A. 198.[5]

In a nutshell, the jury had before it conflicting evidence as to the relative roles played by the 1984 and 1985 incidents vis-a-

5. Appellant makes much of the fact that, in his original report, Dr. Shapiro forged a causal link between the injury and the February 1985 accident. But at trial, the physician explained that this was because Milone gave him a misleading history. When the true facts emerged, Dr. Shapiro found that they painted a "different picture entirely, what you might call a different ball game." R.A. 198. The witness was vigorously cross-examined on his shifting opinions, and it was for the jury to decide which version was

more convincing. Likewise, appellant urges that the information which the jurors were given anent the state of his health in 1984 was too sketchy and speculative to warrant the conclusion that his later miseries flowed from the New Year's Eve injury. We disagree. Milone's criticisms affect weight, not sufficiency. Moreover, by failing to object to the charge, *see supra* Part III, he adequately evinced his willingness to let the jury resolve the issue.

vis Milone's fettle. Plaintiff, of course, had the burden of proof. The jury was told to find for Milone so long as "any proven negligence caused or contributed to the harm ..., even to the slightest degree...." *See supra* at 38. Once the jurors so found, they were constrained by the judge's instructions to award him "$29,000 for past lost wages." *See supra* at 38. But beyond that, they were told to give only whatever else, if anything, was "established by the evidence." *Id.* The jury, without objection, was specifically instructed to eschew an incremental award of past, present, or future damages on account of a preexisting injury if the condition "was bound to worsen anyway...." *See supra* at 38. In that event, the jury was prohibited from "award[ing] damages in the amount that [the preexisting condition] would have worsened anyway." *Id.*

Given these instructions and the record in the case, it is well nigh impossible to say with any certitude that the jury disregarded either the evidence or the charge. The medical and hospital expenses were, as the jury knew, to be paid under Count 3 (maintenance and cure). The lost wages were fixed by the stipulation.[6] That left, in essence, pain and suffering—and there was precious little evidence on that subject at trial. More to the point, the jury could well have found that MFI's negligence contributed to plaintiff's condition in the "slight[ ] degree" necessary for liability to attach, and gone on to infer, as the district judge

hypothesized when denying the Rule 59 motion, "that the suffering and, indeed, the operations required would have eventually been required anyway and that there would have been a worsening of plaintiff's condition with attendant pain as [the] pre-existing injury materially worsened." R.A. 333–34.[7]

## V

We need go no further. In this case, the jury could plausibly have concluded that virtually all of the sequelae flowed in a direct, unbroken stream from the previous injury, and that MFI's negligence did not add measurably to the totality of plaintiff's pain, suffering, or disability. That being so, the verdict was not against either the law or the clear weight of the evidence. While perhaps stingy, its size "fails to shock—or even to tweak—our collective conscience." *Segal*, 746 F.2d at 81. Because the amount "falls within the universe of possible awards that are supported by the evidence....," *Clark v. Taylor*, 710 F.2d 4, 14 (1st Cir.1983), the district judge's refusal to upset the jury verdict should be allowed to stand. Though tempest-tossed and buffeted by the vagaries of litigation, including the factfinding of a seemingly parsimonious group of jurors, Milone has not persuaded us that justice seriously miscarried in his case.

*Affirmed.*

6. Appellant argues that the $29,000 award shows that the jury accepted plaintiff's disability and thus illustrates that the verdict was defective in omitting an increment for pain, suffering, and the like, contrary to the judge's instructions. But this asseveration places the cart well to the forefront of the horse. The record supports equally well the assumption that the jury believed the slight aggravation which occurred in February 1985 left Milone no worse off than before, and awarded him the $29,000 *only* because the judge, in his charge, had set this out as the floor. Viewed from this (permissible) perspective, the verdict would show a scrupulous effort by the jury to evaluate the proof and follow the court's instructions—even though doing so meant awarding damages which it might have thought undeserved.

7. Even if we were to assume for the sake of argument that there must have been some small

amount of added pain and suffering in consequence of the 1985 incident, appellant would not prevail. Our standard leads to a new trial only upon a showing of "a *seriously* erroneous result." *Borras*, 586 F.2d at 887 (emphasis supplied). At best, plaintiff's verdicts in personal injury cases are not models of mathematical exactitude. Thus, the fact that a particular award is a few dollars long or short would rarely (if ever) translate into a manifest miscarriage of justice. *Cf. Hunter v. Sorensen*, 201 Neb. 153, 266 N.W.2d 529, 532 (1978) (where plaintiff's injury was superimposed on preexisting condition and verdict seemed to cover only out-of-pocket items, new trial not warranted; "jury could reasonably have concluded that plaintiff experienced no [incremental] pain and suffering, or if he did, that it was de minimis").