April 7, 1993

[NOT FOR PUBLICATION]

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-2255

GLADYS ALVIRA, ET AL.,

Plaintiffs, Appellees,

v.

F. W. WOOLWORTH COMPANY,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Roberto Schmidt-Monge, U.S. Magistrate Judge]

Before

Stahl, Circuit Judge,

Aldrich and Coffin, Senior Circuit Judges.

Amancio Arias Guardiola for appellant.

Victoria A. Ferrer for appellees.

COFFIN, Senior Circuit Judge. This is a diversity trip-and-

fall case in which a youth was injured in a Woolworth store in

San Juan, Puerto Rico. The youth, Wally Cora, and his mother,

Gladys Alvira, are co-plaintiffs. F.W. Woolworth Company is

defendant. A jury trial before a Magistrate Judge resulted in

verdicts awarding Wally $40,000 (minus 25% for his contributory

negligence) and Gladys Alvira $20,000 for her mental anguish.

Woolworth appeals the court's denial of its motions for

directed verdict and judgment notwithstanding the verdict,

alleging insufficient evidence of liability; in the alternative,

it seeks a new trial on mental anguish damages, alleging that

they are grossly excessive. It also challenges the court's

taxing of certain costs.

We affirm the judgments as to liability and costs. On the

issue of damages awarded to Gladys Alvira, we have determined

that, on this record, any award in excess of $5,000 would

constitute an abuse of discretion and therefore condition the

grant of a new trial on rejection of a remittitur.

I. Sufficiency

Our standard of review for sufficiency is clear. We view

the evidence in the light most favorable to the non-moving party,

as well as giving it the benefit of every legitimate inference.

We reverse a denial of a motion for directed verdict only if

there appears but one reasonable conclusion, in this case a

conclusion of nonliability. We reject reliance on a mere

scintilla or speculation. Tokio Marine & Fire Ins. Co. v. Grove

Mfg. Co., 958 F.2d 1169, 1171 (1st Cir. 1992).

These are the facts, so viewed, which are relevant to

liability. On the Saturday after Thanksgiving, November 26,

1988, Wally Cora, age 14, visited a Woolworth store with two

young friends, to purchase a cassette. There were many other

shoppers crowding the aisle where Wally and his friends were

walking. Wally followed one of his friends. At one point he

bumped into one person, then in trying to extricate himself

bumped into another, then moved to his left toward a counter. A

customer at the counter had just then moved away, revealing a

broom leaning against it. Wally saw it too late and his feet

became entangled with it, causing him to fall.

His left arm was bent and indeed had suffered a compound

fracture, a bone having punctured the skin. Blood was on the

floor. At this point a store employee took the broom and put it

in a closet. Another customer who happened to be a paramedic

attended Wally, who was taken to the office where a cardboard

splint immobilized his arm. The store manager appeared, yelling

at Wally that he had been running and that he had a videotape to

prove it. No such video was ever shown and the manager did not

testify at trial.

Appellant Woolworth first argues that plaintiff failed to

prove a dangerous condition as cause of his fall, citing Cotto v.

Consolidated Mutual Ins. Co., 116 D.P.R. 644 (1985). This case

involved a shopper falling on a slippery floor. We have read

-3-

Cotto as requiring a plaintiff, in a case involving preexisting

conditions of the premises, to show actual or constructive

knowledge on the part of the defendant in order to make an

affirmative showing of negligence. Mas v. United States, No. 92-

1392, slip op. at 7-8 (1st Cir. Jan. 28, 1993).

Appellant misconceives the nature of this case. The cause

of the fall was not a condition that might have been brought

about innocently or by a third party, where a landlord's

negligence consists in knowing about the condition and doing

nothing to remedy it. Rather, the cause was the negligent act of

an employee, in the course of her work, in placing the broom

where, in a crowded store, a passerby might not see it in time to

avoid tripping over it. Moreover, appellant posits its position

on two facts that we cannot accept: that the broom was "easily

perceptible" (brief, p. 11) and that plaintiff was running at the

time (brief, p. 12). Taking facts favorable to plaintiffs, we

must assume that the broom was not visible to Wally and that he

was walking, not running.

In sum, this was, as tried, a case that was properly

submitted to the jury.

II. Damages

Our review of the amount awarded to Gladys Alvira for her

mental damages is stringently restrained. We may not intrude

unless we find the verdict grossly disproportionate to the

injury. Moreover, as we said in Wagenmann v. Adams, 829 F.2d

196, 215 (1st Cir. 1987), "[t]ranslating legal damage into money

-4-

damages -- especially in cases which involve few significant

items of measurable economic loss -- is a matter peculiarly

within a jury's ken." We elaborated in Milone v. Moceri Family,

Inc., 847 F.2d 35, 37 (1st Cir. 1988):

The jury, as we see it, is free to run the whole gamut
of euphonious notes -- to harmonize the verdict at the
highest or lowest points for which there is a sound
evidentiary predicate, or anywhere in between -- so
long as the end result does not violate the conscience
of the court or strike such a dissonant chord that
justice would be denied were the judgment permitted to

stand.

Our analysis begins by noting the unusual circumstances

under which the issue of mental anguish damages was tried. No

experts testified for plaintiffs; reliance was placed wholly on

the medical reports. Plaintiff Gladys Alvira did not testify.

Instead, the parties agreed to the following stipulation:

We stipulate that plaintiff has not put to testify co-
plaintiff, Gladys Alvira. And we stipulate that her
testimony was about her suffering of the mother. What
she saw and felt and looked at her boy suffering from
the injury.

Accordingly, the evidence relating to the possible suffering

of mental anguish by Wally's mother must rest on the testimony of

Wally, of defendant's medical expert, and on the medical records.

First of all, we summarize the history of medical attention,

picking up the story where we left off.

From the manager's office at the store, Wally was taken to a

municipal diagnostic center or dispensary where X-rays were

taken. From there he was admitted to the emergency room of the

Puerto Rico Medical Center at 9:45 p.m., almost five hours after

-5-

his fall. He was accompanied by a friend and the friend's

mother. Wally's own mother at this point did not know of the

accident. Two days later, on November 28, Wally had been

admitted to the San Juan City Hospital. A record noted that he

had no relatives, that a neighbor referred to him as an orphan,

and that he had been living with a "tutor" who had disappeared a

few days previously. In the absence of parental authorization,

it was determined, because the fracture (described as "left open

distal third forearm fracture") was compound, to perform surgery

on an emergency basis.

Surgery under general anaesthesia proceeded successfully,

aligning the bones and preventing infection. His discharge from

the hospital was delayed, pending efforts by the hospital's

social service department to arrange for placement of Wally. He

was discharged on December 5. Shortly thereafter, in early

January of 1989, Wally went to New York to his brother Rafael's

home. On January 17, accompanied by Rafael, Wally had his cast

removed at Lincoln Hospital. We have no information regarding

the whereabouts or condition of Gladys Alvira until a year and

three or four months later when, in April of 1990, Rafael,

Gladys, and Wally returned to live in Puerto Rico.

Wally's testimony as to his present condition was that his

arm still hurt when he did any heavy lifting, that he felt pain

in his wrist and elbow during a change in weather, that he could

not play baseball, and that he did not play on basketball teams

out of apprehension of having his arm struck. Doctors who

-6-

examined him, one at his request, the other at defendant's,

agreed that there was no neurological damage, that the left arm

from hand to shoulder was "essentially normal," that there was

complete range of motion, good alignment, and no residual

impairment. A small scar on the forearm remained.

This is the record on which we must assess the

reasonableness of an award of $20,000 to Wally's mother. Up to a

point we think that Woolworth cannot complain. Perhaps it had

reasons to avoid the risk of stimulating a jury's sympathy by

having Gladys Alvira testify. It may have thought that a minimal

and bland stipulation was less likely to eventuate into a

sizeable verdict than more detailed testimony.

On the other hand, we have evidence in the record that

arouses our skepticism that a jury reasonably could have awarded

the mother one half of the amount awarded (subject to a 25

percent discount) to the son. The mother was not present during

the period of agony and operation; indeed, she was in ignorance

of the accident. As far as the record reveals, she was not with

her son during his convalescence. Indeed, the medical record

notes suggest that there was no close relationship between mother

and son prior to the accident. The jury had no opportunity to

view the mother and hear her describe such suffering as she may

have endured. Nor do we have any reason proffered, such as

illness, to explain why the jury was to be deprived of the

opportunity to assess her credibility.

-7-

Appellee reminds us of De Leon Lopez v. Corporacion Insular

de Seguros, 931 F.2d 116, 125-26 (1st Cir. 1991), where we upheld

the action of the district court in reducing an $800,000 verdict

for emotional damages by ordering a remittitur to $110,000. In

that case plaintiff's daughter-in-law had given birth to twins.

One of them inadvertently was switched with a twin from another

pair and brought up as a natural child of the plaintiff's son and

daughter-in-law, and as his own granddaughter. The mix-up was

discovered nearly two years later. Plaintiff's distress over

losing the grandchild he thought his own and over the wrenching

experience of his son and daughter-in-law was described in

testimony by all three.

The district court carefully evaluated the evidence,

observing that the plaintiff had not lived in Puerto Rico during

the period of nondiscovery and had visited the twins no more than

twice a month, still had the opportunity to maintain contact with

his quondam granddaughter, and had produced no evidence of

economic loss or expert testimony as to psychological damage.

The court, in settling upon the figure of $110,000, left no doubt

that it was sounding the highest "euphonious note" consistent

with the evidence. de Leon Lopez v. Corporacion Insular de

Seguros, 742 F. Supp. 44, 47 n.7 (D.P.R. 1990).

Appellee argues that our affirmance of the $110,00 figure in

a case with such minimal evidence of psychic harm amply supports

affirming the $20,000 figure in this case. We disagree. In the

first place, Lopez involved "appellate review of post-remittitur

-8-

damages for non-economic losses[, which] is extremely narrow. . .

." 931 F.2d at 125. We indeed are loath "to grade the teacher's

grading of the essay." Wagenmann, 829 F.2d at 215. In this case

the Magistrate Judge did not reveal to us any such grading

process; indeed, there was precious little essay to grade.

In the second place, in this case, unlike in Lopez, 931 F.2d

at 126, we cannot say that "the jury system, which depends

heavily on the common sense and collective human experience of

jurors for a fair resolution of such quandaries [involved in

translating distress into dollars], has rendered yeoman service."

Through no fault of its own, the jury lacked the ordinary basis

for applying its common sense; it had no testimony from or about

the sufferer. The slate was not quite blank. What factual

indications there were indicated that in the short run Gladys

Alvira did not know of Wally's accident and suffering and that in

the long run the residual effects of the accident were not

severe.

In sum, even crediting Gladys Alvira, as the stipulation

commands, with the normal concern and suffering over a son's

accident and resulting aches and pains, we feel that $5,000 is

the limit of an adequate award for mental anguish in this case.

III. Costs

Appellant challenges the allowance of the costs of

transcribing depositions of appellant's expert witness (who

testified) and of appellant's store manager (who did not). The

basis of the challenge was simply that neither deposition was

-9-

introduced at trial. But it is obvious that plaintiffs were

prudent in deposing appellant's expert and in reducing his

comments to writing, whether or not any specific part was used in

cross examination. And it was essential that plaintiffs know

what the store manager was prepared to say; it was apparently

this deposition that informed the plaintiffs that no videotape of

Wally's running existed.

As we said in Templeman v. Chris Craft Corp., 770 F.2d 245,

249 (1st Cir. 1985), "[i]t is within the discretion of the

district court to tax deposition costs if special circumstances

warrant it, even though the depositions were not put in evidence

or used at trial." As for appellant's contentions that

plaintiffs' expert witness's fee for attendance at the trial

should be denied because he was not a treating physician and that

the cost of copying papers should be excluded, we see no merit in

them.

The judgments of liability and the taxing of costs are

affirmed. The denial of the motion for new trial as to damages

for the mental anguish of Gladys Alvira is reversed unless the

plaintiffs agree to accept a remittitur of $5,000. No costs.

-10-