991 F.2d 786
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Gladys ALVIRA, et al., Plaintiffs-Appellees,
v.
F. W. WOOLWORTH COMPANY, Defendant-Appellant.
 No. 92-2255.
 United States Court of Appeals,
First Circuit.
 April 7, 1993
 
 Appeal from the United States District Court for the District of Puerto Rico
 Amancio Arias Guardiola for appellant.
 Victoria A. Ferrer for appellees.
 D.Puerto Rico.
 AFFIRMED.
 Before Stahl, Circuit Judge, Aldrich and Coffin, Senior Circuit Judges.
 COFFIN, Senior Circuit Judge.
 
 
 1
 This is a diversity trip-and-fall case in which a youth was injured in a Woolworth store in San Juan, Puerto Rico. The youth, Wally Cora, and his mother, Gladys Alvira, are co-plaintiffs. F.W. Woolworth Company is defendant. A jury trial before a Magistrate Judge resulted in verdicts awarding Wally $40,000 (minus 25% for his contributory negligence) and Gladys Alvira $20,000 for her mental anguish.
 
 
 2
 Woolworth appeals the court's denial of its motions for directed verdict and judgment notwithstanding the verdict, alleging insufficient evidence of liability; in the alternative, it seeks a new trial on mental anguish damages, alleging that they are grossly excessive. It also challenges the court's taxing of certain costs.
 
 
 3
 We affirm the judgments as to liability and costs. On the issue of damages awarded to Gladys Alvira, we have determined that, on this record, any award in excess of $5,000 would constitute an abuse of discretion and therefore condition the grant of a new trial on rejection of a remittitur.
 
 I. Sufficiency
 
 4
 Our standard of review for sufficiency is clear. We view the evidence in the light most favorable to the non-moving party, as well as giving it the benefit of every legitimate inference. We reverse a denial of a motion for directed verdict only if there appears but one reasonable conclusion, in this case a conclusion of nonliability. We reject reliance on a mere scintilla or speculation. Tokio Marine & Fire Ins. Co. v. Grove Mfg. Co., 958 F.2d 1169, 1171 (1st Cir. 1992).
 
 
 5
 These are the facts, so viewed, which are relevant to liability. On the Saturday after Thanksgiving, November 26, 1988, Wally Cora, age 14, visited a Woolworth store with two young friends, to purchase a cassette. There were many other shoppers crowding the aisle where Wally and his friends were walking. Wally followed one of his friends. At one point he bumped into one person, then in trying to extricate himself bumped into another, then moved to his left toward a counter. A customer at the counter had just then moved away, revealing a broom leaning against it. Wally saw it too late and his feet became entangled with it, causing him to fall.
 
 
 6
 His left arm was bent and indeed had suffered a compound fracture, a bone having punctured the skin. Blood was on the floor. At this point a store employee took the broom and put it in a closet. Another customer who happened to be a paramedic attended Wally, who was taken to the office where a cardboard splint immobilized his arm. The store manager appeared, yelling at Wally that he had been running and that he had a videotape to prove it. No such video was ever shown and the manager did not testify at trial.
 
 
 7
 Appellant Woolworth first argues that plaintiff failed to prove a dangerous condition as cause of his fall, citing Cotto v. Consolidated Mutual Ins. Co., 116 D.P.R. 644 (1985). This case involved a shopper falling on a slippery floor. We have read Cotto as requiring a plaintiff, in a case involving preexisting conditions of the premises, to show actual or constructive knowledge on the part of the defendant in order to make an affirmative showing of negligence. Mas v. United States, No. 92-1392, slip op. at 7-8 (1st Cir. Jan. 28, 1993).
 
 
 8
 Appellant misconceives the nature of this case. The cause of the fall was not a condition that might have been brought about innocently or by a third party, where a landlord's negligence consists in knowing about the condition and doing nothing to remedy it. Rather, the cause was the negligent act of an employee, in the course of her work, in placing the broom where, in a crowded store, a passerby might not see it in time to avoid tripping over it. Moreover, appellant posits its position on two facts that we cannot accept: that the broom was "easily perceptible" (brief, p. 11) and that plaintiff was running at the time (brief, p. 12). Taking facts favorable to plaintiffs, we must assume that the broom was not visible to Wally and that he was walking, not running.
 
 
 9
 In sum, this was, as tried, a case that was properly submitted to the jury.
 
 II. Damages
 
 10
 Our review of the amount awarded to Gladys Alvira for her mental damages is stringently restrained. We may not intrude unless we find the verdict grossly disproportionate to the injury. Moreover, as we said in Wagenmann v. Adams, 829 F.2d 196, 215 (1st Cir. 1987), "[t]ranslating legal damage into money damages-especially in cases which involve few significant items of measurable economic loss-is a matter peculiarly within a jury's ken." We elaborated in Milone v. Moceri Family, Inc., 847 F.2d 35, 37 (1st Cir. 1988):
 
 
 11
 The jury, as we see it, is free to run the whole gamut of euphonious notes-to harmonize the verdict at the highest or lowest points for which there is a sound evidentiary predicate, or anywhere in between-so long as the end result does not violate the conscience of the court or strike such a dissonant chord that justice would be denied were the judgment permitted to stand.
 
 
 12
 Our analysis begins by noting the unusual circumstances under which the issue of mental anguish damages was tried. No experts testified for plaintiffs; reliance was placed wholly on the medical reports. Plaintiff Gladys Alvira did not testify. Instead, the parties agreed to the following stipulation:
 
 
 13
 We stipulate that plaintiff has not put to testify co-plaintiff, Gladys Alvira. And we stipulate that her testimony was about her suffering of the mother. What she saw and felt and looked at her boy suffering from the injury.
 
 
 14
 Accordingly, the evidence relating to the possible suffering of mental anguish by Wally's mother must rest on the testimony of Wally, of defendant's medical expert, and on the medical records. First of all, we summarize the history of medical attention, picking up the story where we left off.
 
 
 15
 From the manager's office at the store, Wally was taken to a municipal diagnostic center or dispensary where X-rays were taken. From there he was admitted to the emergency room of the Puerto Rico Medical Center at 9:45 p.m., almost five hours after his fall. He was accompanied by a friend and the friend's mother. Wally's own mother at this point did not know of the accident. Two days later, on November 28, Wally had been admitted to the San Juan City Hospital. A record noted that he had no relatives, that a neighbor referred to him as an orphan, and that he had been living with a "tutor" who had disappeared a few days previously. In the absence of parental authorization, it was determined, because the fracture (described as "left open distal third forearm fracture") was compound, to perform surgery on an emergency basis.
 
 
 16
 Surgery under general anaesthesia proceeded successfully, aligning the bones and preventing infection. His discharge from the hospital was delayed, pending efforts by the hospital's social service department to arrange for placement of Wally. He was discharged on December 5. Shortly thereafter, in early January of 1989, Wally went to New York to his brother Rafael's home. On January 17, accompanied by Rafael, Wally had his cast removed at Lincoln Hospital. We have no information regarding the whereabouts or condition of Gladys Alvira until a year and three or four months later when, in April of 1990, Rafael, Gladys, and Wally returned to live in Puerto Rico.
 
 
 17
 Wally's testimony as to his present condition was that his arm still hurt when he did any heavy lifting, that he felt pain in his wrist and elbow during a change in weather, that he could not play baseball, and that he did not play on basketball teams out of apprehension of having his arm struck. Doctors who examined him, one at his request, the other at defendant's, agreed that there was no neurological damage, that the left arm from hand to shoulder was "essentially normal," that there was complete range of motion, good alignment, and no residual impairment. A small scar on the forearm remained.
 
 
 18
 This is the record on which we must assess the reasonableness of an award of $20,000 to Wally's mother. Up to a point we think that Woolworth cannot complain. Perhaps it had reasons to avoid the risk of stimulating a jury's sympathy by having Gladys Alvira testify. It may have thought that a minimal and bland stipulation was less likely to eventuate into a sizeable verdict than more detailed testimony.
 
 
 19
 On the other hand, we have evidence in the record that arouses our skepticism that a jury reasonably could have awarded the mother one half of the amount awarded (subject to a 25 percent discount) to the son. The mother was not present during the period of agony and operation; indeed, she was in ignorance of the accident. As far as the record reveals, she was not with her son during his convalescence. Indeed, the medical record notes suggest that there was no close relationship between mother and son prior to the accident. The jury had no opportunity to view the mother and hear her describe such suffering as she may have endured. Nor do we have any reason proffered, such as illness, to explain why the jury was to be deprived of the opportunity to assess her credibility.
 
 
 20
 Appellee reminds us of De Leon Lopez v. Corporacion Insular de Seguros, 931 F.2d 116, 125-26 (1st Cir. 1991), where we upheld the action of the district court in reducing an $800,000 verdict for emotional damages by ordering a remittitur to $110,000. In that case plaintiff's daughter-in-law had given birth to twins. One of them inadvertently was switched with a twin from another pair and brought up as a natural child of the plaintiff's son and daughter-in-law, and as his own granddaughter. The mix-up was discovered nearly two years later. Plaintiff's distress over losing the grandchild he thought his own and over the wrenching experience of his son and daughter-in-law was described in testimony by all three.
 
 
 21
 The district court carefully evaluated the evidence, observing that the plaintiff had not lived in Puerto Rico during the period of nondiscovery and had visited the twins no more than twice a month, still had the opportunity to maintain contact with his quondam granddaughter, and had produced no evidence of economic loss or expert testimony as to psychological damage. The court, in settling upon the figure of $110,000, left no doubt that it was sounding the highest "euphonious note" consistent with the evidence. de Leon Lopez v. Corporacion Insular de Seguros, 742 F. Supp. 44, 47 n.7 (D.P.R. 1990).
 
 
 22
 Appellee argues that our affirmance of the $110,00 figure in a case with such minimal evidence of psychic harm amply supports affirming the $20,000 figure in this case. We disagree. In the first place, Lopez involved "appellate review of post-remittitur damages for non-economic losses[, which] is extremely narrow...." 931 F.2d at 125. We indeed are loath "to grade the teacher's grading of the essay." Wagenmann, 829 F.2d at 215. In this case the Magistrate Judge did not reveal to us any such grading process; indeed, there was precious little essay to grade.
 
 
 23
 In the second place, in this case, unlike in Lopez, 931 F.2d at 126, we cannot say that "the jury system, which depends heavily on the common sense and collective human experience of jurors for a fair resolution of such quandaries [involved in translating distress into dollars], has rendered yeoman service." Through no fault of its own, the jury lacked the ordinary basis for applying its common sense; it had no testimony from or about the sufferer. The slate was not quite blank. What factual indications there were indicated that in the short run Gladys Alvira did not know of Wally's accident and suffering and that in the long run the residual effects of the accident were not severe.
 
 
 24
 In sum, even crediting Gladys Alvira, as the stipulation commands, with the normal concern and suffering over a son's accident and resulting aches and pains, we feel that $5,000 is the limit of an adequate award for mental anguish in this case.
 
 III. Costs
 
 25
 Appellant challenges the allowance of the costs of transcribing depositions of appellant's expert witness (who testified) and of appellant's store manager (who did not). The basis of the challenge was simply that neither deposition was introduced at trial. But it is obvious that plaintiffs were prudent in deposing appellant's expert and in reducing his comments to writing, whether or not any specific part was used in cross examination. And it was essential that plaintiffs know what the store manager was prepared to say; it was apparently this deposition that informed the plaintiffs that no videotape of Wally's running existed.
 
 
 26
 As we said in Templeman v. Chris Craft Corp., 770 F.2d 245, 249 (1st Cir. 1985), "[i]t is within the discretion of the district court to tax deposition costs if special circumstances warrant it, even though the depositions were not put in evidence or used at trial." As for appellant's contentions that plaintiffs' expert witness's fee for attendance at the trial should be denied because he was not a treating physician and that the cost of copying papers should be excluded, we see no merit in them.
 
 
 27
 The judgments of liability and the taxing of costs are affirmed. The denial of the motion for new trial as to damages for the mental anguish of Gladys Alvira is reversed unless the plaintiffs agree to accept a remittitur of $5,000. No costs.