Edwin ROSADO, et al., Plaintiff,

v.

**PLAZA LAS AMERICAS, INC., et al., Defendant.**

Civil No. 96–1730 (JP).

United States District Court,
D. Puerto Rico.

April 25, 1997.

---

Francisco Agrait–Oliveras, Jaime F. Agrait–Lladó, Hato Rey, PR, for Plaintiff.

Iván M. Fernandez, Aixa Maldonado–Quinones, San Juan, PR, for Defendant.

## OPINION AND ORDER

PIERAS, Senior District Judge.

The Court has before it plaintiffs' motion for a partial new trial as to damages and their motion in relation thereto (**docket Nos. 30 and 31**). Defendants have not opposed plaintiffs' motion.

### I. INTRODUCTION

In this tort action under P.R. Laws Ann. tit. 31, § 5141 (1990), plaintiffs Edwin Rosado, his wife Magaly Santiago and their conjugal partnership sought damages allegedly caused when Mr. Rosado fell on a stairway at Plaza Las Americas in San Juan, Puerto Rico, on January 1, 1996, at approximately 9:00 p.m. Plaintiffs alleged that the fall was caused by the lack of lighting in the stairwell. Codefendants admitted that the overhead light was not lit but alleged there was no causal relationship between the lack of lighting and the fall, and therefore they were not liable. Defendants also raised the issue of comparative negligence. Subject matter jurisdiction is based on the diverse citizenship of the parties and the amount in controversy. 28 U.S.C. § 1332.

The case was tried to a jury on March 24–26, 1997. The jury returned a verdict finding that Plaza Las Americas had acted negligently and that this negligence was the proximate cause of injuries suffered by coplaintiffs Edwin Rosado and Magaly Santiago (docket No. 26). The jury assessed damages in the amount of $20,000.00 as compensation for Mr. Rosado's damages and $3,000.00 for those sustained by Ms. Santiago. The jury further found that Edwin Rosado acted negligently in the manner in which he descended the stairs and assessed the comparative negligence of defendant and Edwin Rosado at fifty percent (50%) each. After incorporating the parties' stipulation regarding damages suffered by the conjugal partnership for medical expenses, and reducing the damage awards to reflect the finding of comparative negligence, the Court entered a final judgment (docket No. 27) for Edwin Rosado to have and recover $10,000.00 from codefendants Plaza Las Americas and Universal Insurance Company, jointly and severally; for coplaintiff Magaly Santiago to have and re-

cover $1,500.00 from codefendants Plaza Las Americas and Universal Insurance Company, jointly and severally; and for their conjugal partnership to have and recover $238.00 from codefendants Plaza Las Americas and Universal Insurance Company, jointly and severally.

## II. STANDARD FOR NEW TRIAL PURSUANT TO FED. R. CIV. P. 59

 Federal Rule of Civil Procedure 59 provides, *inter alia,* that a new trial may be granted on all or part of the issues tried in an action for which there has been a trial by jury for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States. A trial judge cannot "displace a jury's verdict merely because he disagrees with it or would have found otherwise in a bench trial." *Milone v. Moceri Family, Inc.,* 847 F.2d 35, 37 (1st Cir.1988). Nor may a trial judge order a new trial because a contrary verdict may have been equally—or even more easily—supportable on the evidence. *Freeman v. Package Mach. Co.,* 865 F.2d 1331, 1333 (1st Cir.1988). Rather, the court may order a new trial only where the jury's verdict is against the clear weight of the evidence such that upholding the verdict will result in a miscarriage of justice. *Conway v. Electro Switch Corp.,* 825 F.2d 593, 598–99 (1st Cir.1987). The district court has broad legal authority to determine whether a jury's verdict is against the clear weight of the evidence. *Vda. de Pérez v. Hospital del Maestro,* 910 F.2d 1004, 1006 (1st Cir.1990). Absent error of law, the judge's prerogative to set aside a verdict crystallizes only if "it is quite clear that the jury has reached a seriously erroneous result." *Id.* (quoting *Borrás v. Sea–Land Serv. Inc.,* 586 F.2d 881, 887 (1st Cir.1978)). The party who contests the sufficiency of a jury's award of damages in a personal injury case bears a particularly heavy burden since "[t]ranslating legal damage into money damages—especially in cases which involve few significant items of measurable economic loss—is a matter peculiarly within a jury's ken." *Milone,* 847 F.2d at 37 (quoting *Wagenmann v. Adams,* 829 F.2d 196, 200–01 (1st Cir.1987)). A jury verdict should be validated if after scanning the evidence in the light most congenial to the nonmovant, the verdict does not exceed or fall below any rational appraisal or estimate of the damages that could be based on the evidence before the jury. *Id.* at 37–38.

## III. DISCUSSION

Plaintiffs seek a new trial as to damages only, on the ground that the damages awarded were so inadequate as to "shock the judicial conscience." Plaintiffs assert that the total award of $11,738.00 is an absurdly low sum that requires judicial intervention to prevent a miscarriage of justice.

 Plaintiffs err in looking to plaintiffs' total recovery of $11,738.00 as the benchmark for determining whether the damages award fell below any rational estimate of the damages based on the evidence. The jury appraised Mr. Rosado's damages at $20,000.00 and Ms. Santiago's at $3,000.00, although these amounts were reduced by the jury's determination that Mr. Rosado acted negligently in descending the stairs. The Court must look to the jury's assessment of damages before the reduction for Mr. Rosado's comparative negligence in determining whether a new trial is warranted.

The parties stipulated to the amount of plaintiffs' medical expenses and did not seek damages for lost earnings. Therefore, the jury was limited to assessing damages for pain and suffering, mental anguish, and loss of enjoyment of life suffered by plaintiffs as a result of Mr. Rosado's physical injuries. Plaintiffs sought to prove that Mr. Rosado was permanently injured as a result of the fall while defendants contended that he underwent medical treatment for a broken wrist for approximately four months and suffered no further consequences. Both parties offered the testimony of expert medical witnesses regarding the nature and extent of Mr. Rosado's physical injuries. We scan the evidence relating to damages in the light most congenial to the defendants.

Mr. Rosado testified that immediately after the fall he was taken unconscious to the hospital, where he received sutures for a cut on his forehead and pain medication. The next day X-rays were taken of his left wrist

and a cast was applied, which he wore for approximately three months. Mr. Rosado testified that he underwent 18 physical therapy sessions after removal of the cast, although cross-examination revealed that he produced receipts for only 13 sessions. These physical therapy sessions lasted approximately 2–3 weeks. Thereafter, he received no further treatment for his accident nor did he see a neurosurgeon regarding headaches he allegedly began to experience after the fall. He and his wife relocated to New York where he obtained a job with a higher salary and more benefits than the one he had in Puerto Rico. When questioned regarding how the accident had affected his life, Mr. Rosado testified that he no longer exercised like he did before the accident, which affected his relationship with his children, with whom he previously had played frequently; his attitude and moods had been affected by his condition; and that these mood changes had in turn affected his marriage. However, defense counsel impeached Mr. Rosado's credibility by showing that he gave differing versions of the accident at different times to different people. Therefore, the jury could reasonably have concluded that Mr. Rosado was not significantly affected by the accident after the approximately four months during which he underwent treatment, or that these complaints were attributable to some other cause (stress associated with the move to New York, for example), or were simply not true.

Dr. Grovas, Mr. Rosado's treating physician, recommended that he consult a neurologist for an evaluation of the cause of his headaches, a recommendation that Mr. Rosado failed to follow. Therefore, the jury was entitled to believe that plaintiffs had not carried their burden in proving that Mr. Rosado's headaches were caused by the fall. Plaintiffs' expert witness examined Mr. Rosado in June of 1996 and assessed a whole body impairment of 22 percent. Dr. Grovas testified that he examined Mr. Rosado again on March 24, 1997, and he had improved significantly, particularly with respect to the range of motion in his left wrist, which was almost normal; Dr. Grovas assessed his whole body impairment after the second examination at 14 percent. During cross-examination, de-

fense counsel asked Dr. Grovas to break down this total impairment of 14 percent. Of the 14 percent total body impairment, Dr. Grovas testified that 2.4 percent related to the impairment to the range of motion in Mr. Rosado's wrist. The remaining total body impairment (approximately 12 percent) was arrived at by assessing Mr. Rosado's strength loss index. Dr. Orlando Fernández, defendants' expert witness, assessed the impairment to the range of motion in Mr. Rosado's wrist at 2 percent, quite close to Dr. Grovas' assessment. However, he stated that in accordance with the guidelines for using the American Medical Association tables for assessing physical impairments, he does not analyze grip strength in assessing total body impairment since there is no objectively reliable method for testing grip strength. Dr. Orlando Fernández stated that he tested Mr. Rosado's grip during the medical examination by asking him to grasp his hands, and found it to be excellent in both hands. Moreover, Dr. Fernández testified that injuries are not considered permanent until 1–2 years after an accident and that Mr. Rosado's condition might improve further. Based on Dr. Fernández' testimony, the jury was entitled to find that Mr. Rosado suffered only a minor impairment to the range of motion in his left hand, which might improve further; the alleged loss of grip was possibly the result of malingering; and there was no established connection between the fall and Mr. Rosado's headaches.

Ms. Santiago's undisputed testimony regarding damages was that she heard her husband's head hit the cement; that people were screaming; her husband was unconscious and laying on his stomach; that she turned him over and his face was very bloody; that she kept talking to him in an effort to prevent him from going into a coma; that some men helped her place her husband in the car; she drove him to the hospital; and at one point she thought he was dead. There was no evidence that she ever sought professional medical or psychological treatment for the mental anguish she allegedly suffered as a result of her husband's fall. She also testified that her husband experi-

enced mood changes after the accident and these had affected their relationship.

Reviewing all the evidence in the light most favorable to the defendants, the Court cannot say that $20,000.00 for Mr. Rosado's injuries and $3,000.00 for Ms. Santiago's are against the clear weight of the evidence. Furthermore, the jury's finding of comparative negligence was amply supported by the evidence. Plaintiffs sought a jury trial but now, dissatisfied with the damages awarded, they seek to retain the jury's finding of liability and yet avoid that same jury's wisdom with respect to the amount of damages. "One of the peculiarities of the jury system is that each case involves a risk about what the jury will believe and decide. However, once the verdict has been reached, that decision must be respected." *Taber Partners I v. Insurance Co. North*, 917 F.Supp. 112 (D.P.R.1996). The motion for a new trial is hereby **DENIED**.

IT IS SO ORDERED.