USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-1244 ANGEL TOUCET, Plaintiff, Appellee, v. MARITIME OVERSEAS CORP., Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Gilberto Gierbolini, U.S. District Judge] ___________________ ____________________ Before Stahl, Circuit Judge, _____________ Campbell, Senior Circuit Judge, ____________________ and Skinner,* Senior District Judge. _____________________ ____________________ Andrew H. Quinn with whom Dante Mattioni, Francis X. Kelly, _________________ _______________ _________________ Mattioni, Mattioni & Mattioni, Ltd., and Antonio Jimenez Miranda were ____________________________________ _______________________ on brief for appellant. Harry A. Ezratty for appellee. ________________ ____________________ April 20, 1993 ____________________ _____________________ * Of the District of Massachusetts, sitting by designation. SKINNER, Senior District Judge _____________________ Plaintiff Angel Toucet, a seaman, brought this action against his employer, Maritime Overseas Corporation, seeking damages for a back injury suffered aboard the defendant's vessel, the Overseas Alaska. Toucet alleged negligence _______________ under the Jones Act, 46 U.S.C. 688, and unseaworthiness under general maritime law. After trial, a jury returned a special verdict in Toucet's favor on the Jones Act count, but did not find the Overseas Alaska to be unseaworthy. The _______________ trial court denied Maritime's motions for judgment n.o.v. and a new trial or, in the alternative, for remittitur of the $75,000 verdict. On appeal, Maritime contends that the trial court erred in denying Maritime's motions for judgment n.o.v. and a new trial because the jury's finding of negligence is irreconcilably inconsistent with its rejection of the claim of unseaworthiness. Maritime also asserts that the trial court erred by allowing Toucet's counsel to pose a hypothetical question that was improperly based on facts not in evidence and by denying Maritime's motion for remittitur. 2 BACKGROUND BACKGROUND We briefly review the evidence developed at trial in the light most favorable to Toucet. See Transnational Corp. _______________________ v. Rodio & Ursillo, Ltd., 920 F.2d 1066, 1068 (1st Cir. ________________________ 1990). On August 27, 1987, while the Overseas Alaska was in _______________ the port of New Orleans, the crew was advised that the vessel's cargo tanks would be bottom washed. Seeking to avoid the cleaning operation, Toucet and two other crew members requested leave to quit the ship. Toucet told the boatswain that after working approximately twelve hours consecutively he was too exhausted to participate in the tank cleaning. Toucet's request was denied because the ship's union agreement required crew members to provide 24 hours advance notice before quitting. At approximately 5:30 p.m., the cleaning process, which is commonly called "butterworthing," began. Several witnesses testified that butterworthing is hard work, requiring several men to complete the task. On this particular day, the Overseas Alaska's crew was divided into _______________ two six-hour shifts, each consisting of four men. Toucet, who was now working overtime, was assigned to the first shift. While the Overseas Alaska's union agreement required _______________ 3 a minimum of three men to perform the task, testimony at trial revealed that butterworthing was ordinarily performed on other ships by more than four men. The term butterworthing refers to the equipment (a butterworth machine) used to clean the tanks. During trial, the butterworth was described as a brass cylindrical device, weighing approximately 30 pounds. The butterworth is attached to the end of a flexible, hard rubber hose that has a 10-inch diameter and weighs approximately 100 pounds. To accomplish bottom washing, the crew lowers the hose and butterworth approximately 30-40 feet into the openings of each tank. Once in the tank, hot water is pumped through the hose into the butterworth. The water pressure causes the head of the butterworth to spin and, while the head spins, water is forced out of two release valves located on the side of the butterworth. Upon release from the butterworth, the hot water is directed against the wall and floor panels of the cargo tanks at approximately 90 p.s.i. pressure. Once a tank is cleaned, the crew pulls the butterworth and hose out of the opening and moves or "shifts" the equipment to the next opening. Typically, the removal process is accomplished by the seamen pulling on the hose in unison. 4 Toucet testified that he was injured while removing the butterworth and hose from one of the Overseas Alaska's _______________ tanks. More specifically, Toucet testified that the deck engine utility (DEU), who was one of the crew members assigned to assist in the butterworthing, was inexperienced and inept at the task. As a result of the DEU's inexperience, the hose was allowed to slacken on several occasions. Toucet and at least one other team member complained to the boatswain that the DEU's inexperience was making the butterworthing more difficult and Toucet again reported that he was exhausted. The boatswain replied that he could not do anything because the rest of the crew was sleeping. A short time after complaining, Toucet testified that he was jolted by grasping at the slipping hose and that he felt his back crack when he attempted to stand erect. The case was submitted to the jury on both the Jones Act and general maritime law claims. With regard to unseaworthiness, Toucet alleged that the Overseas Alaska was _______________ unseaworthy in relation to the butterworthing operation because: (1) the number of seamen provided to complete the task was inadequate, and (2) one of the seamen who was assigned to the task was inexperienced and inept. Toucet's negligence claim under the Jones Act was similarly based on 5 Maritime's failure to provide an adequate and experienced crew for the butterworthing operation. In addition, Toucet alleged that Maritime was negligent by requiring him to participate in the butterworthing operation despite his earlier complaint of exhaustion. DISCUSSION DISCUSSION A. Alleged Verdict Inconsistency _____________________________ When a special verdict form results in apparently conflicting findings, a court has a duty under the Seventh Amendment to harmonize the answers if at all possible under a fair reading. Atlantic & Gulf Stevedores, Inc. v. ___________________________________ Ellerman Lines, Ltd., 369 U.S. 355, 364 (1962); Santiago- ____________________ _________ Negron v. Castro-Davila, 865 F.2d 431, 443 (1st Cir. 1989) _______________________ (citing Gallick v. Baltimore & Ohio R.R. Co., 372 U.S. 108, ____________________________________ 119 (1963)). Maritime contends that the jury's answers on the negligence and seaworthiness questions cannot be harmonized because both claims are grounded on the same underlying factual allegations -- that the crew was both inadequate and too inexperienced to accomplish the butterworthing task. By finding the Overseas Alaska to be seaworthy, Maritime argues _______________ that the jury necessarily rejected Toucet's inadequate and inexperienced assistance allegations. Maritime concludes, 6 therefore, that there was no basis for finding it negligent and that the verdict must be set aside as irreconcilably inconsistent. We need not address the merits of this argument because Maritime failed to make a timely objection to the alleged inconsistency. In this circuit, a "party waives inconsistency if it fails to object after the verdict is read and before the jury is dismissed." Bonilla v. Yamaha _________________ Motors Corp., 955 F.2d 150, 155-56 (1st Cir. 1992) (citing ____________ Austin v. Lincoln Equip. Assocs., 888 F.2d 934, 939 (1st ________________________________ Cir. 1989)); Peckham v. Continental Casualty Ins. Co., 895 __________________________________________ F.2d 830, 836 (1st Cir. 1990) (citing McIsaac v. Didriksen ____________________ Fishing Corp., 809 F.2d 129, 134 (1st Cir. 1987)). This is _____________ because the "only efficient time to cure the problem is after the jury announces its results and before it is excused, and it is the responsibility of counsel to make timely objection." Austin v. Lincoln Equip. Assocs., 888 ________________________________ F.2d at 939. We have carefully reviewed the entire record in this case, including the clerk's minutes of the proceedings and the docket sheet.1 It is apparent from the record that ____________________ 1 Under Rule 10, the record on appeal properly includes "[t]he original papers and exhibits filed in the district court, the transcript of proceedings, if any, and a 7 Maritime failed to object to the verdict's asserted inconsistency prior to the jury's discharge. (Clerk's Minutes, Oct. 10, 1991; Docket Entry 71.) In fact, Maritime did not raise the inconsistency issue until filing its post trial motions on October 23, 1991 -- 13 days after the jury was discharged and long after the optimum time for curing any alleged defect. (Docket Entry 74.) While Maritime omitted the portion of the transcript relating to the reading of the verdict from its appendix,2 our review on appeal is not limited to the materials submitted by the parties. FED. R. APP. P. 30(a) ("The fact that parts of the record are not included in the appendix, shall not prevent the parties or the court from relying on such parts."). Maritime's failure to object cannot be excused by its inability to anticipate the jury reaching potentially inconsistent findings. See McIsaac v. Didriksen Fishing ________________________________ ____________________ certified copy of the docket entries prepared by the clerk of the district court . . . ." FED. R. APP. P. 10(a). Rule 10's scope reaches "'all papers presented to the district court and filed in the record and all papers filed by the district court itself.'" In re Arthur Andersen & Co., 621 ____________________________ F.2d 37, 39 (1st Cir. 1980) (quoting 9 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE 210.04[1]). 2 Maritime's failure to include the October 10, 1991 transcript in its appendix is particularly surprising since the verdict, which was returned and read in open court on that day, is the primary focus of the present appeal. 8 Corp., 809 F.2d at 134 (rejecting appellant's argument that _____ it could not have anticipated verdict inconsistency where jury instructions and special verdict form served as harbingers for inconsistency). The circumstances of this case indicate that Maritime had ample opportunity to "portend possible verdict inconsistency." Austin v. Lincoln _________________ Equip. Assocs., 888 F.2d at 939. For instance, Maritime ______________ should have been alerted by the use of the special verdict form alone. See id. As we noted previously, "'[t]he mere ________ fact that the jury's verdict would be in the form of special answers should have been enough to alert counsel to potential inconsistency.'" Id. (quoting McIsaac v. ____ __________ Didriksen Fishing Corp., 809 F.2d at 134). _______________________ In addition to the special verdict form, Maritime should have been alerted to the potential inconsistency by the jury instructions. See McIsaac v. Didriksen Fishing ________________________________ Corp., 809 F.2d at 134. The court specifically instructed _____ the jury that the negligence and unseaworthiness claims were "separate and independent" and that the plaintiff could recover on one or both. (Appellant's App. at 753a and 760a.) In fact, the jury requested additional instructions regarding the meaning of unseaworthiness. (Clerk's Minutes, Oct. 10, 1991; Docket Entry 71.); see McIsaac v. Didriksen ________________________ 9 Fishing Corp., 809 F.2d at 134 (counsel on notice of _____________ potential inconsistency where jury interrupted deliberations to inquire into differences between negligence and breach of warranty claims). Despite these obvious warning beacons, Maritime remained silent while the verdict was read and the jury was discharged. We decline to condone this "'agreeable acquiescence to perceivable error as a weapon of appellate advocacy.'" Id. (quoting Merchant v. Ruhle, 740 F.2d 86, 92 ____ _________________ (1st Cir. 1984)). While the timeliness issue was not addressed by either party and consequently was not explored by the trial court, "'[w]e are, of course, free to affirm a district court's decision on any ground supported by the record even if the issue was not pleaded, tried or otherwise referred to in the proceedings below.'" Chamberlin v. 101 Realty, Inc., 915 ______________________________ F.2d 777, 783 n.8 (1st Cir. 1990) (quoting Norris v. _________ Lumbermen's Mut. Casualty Co., 881 F.2d 1144, 1151-52 (1st _____________________________ Cir. 1989) (additional citations omitted)). This is particularly appropriate here because the parties have had sufficient opportunity to develop arguments relating to the verdict's alleged inconsistency before both the trial court and this court. See Papex Int'l Brokers, Ltd. v. Chase ___ __________________________________ 10 Manhattan Bank, 821 F.2d 883, 885 (1st Cir. 1987). In _______________ addition, Maritime's untimely objection is apparent from the record and our determination can be made as a matter of law. See Watterson v. Page, No. 92-1224, 1993 U.S. App. LEXIS _____________________ 2029, at *14 n.3 (1st Cir. Feb. 9, 1993). Under these circumstances, it is appropriate to affirm the trial court's decision, even though the precise issue was neither raised by the parties or addressed by the trial court. See id. ______ Accordingly, we hold that Maritime waived any potential inconsistency in the jury's verdict as a basis for appeal by failing to object before the jury was discharged. In any case, there is no inconsistency between the verdicts in this case. It is well recognized that claims under the Jones Act and claims for unseaworthiness are discrete claims. See, e.g., Usner v. Luckenbach Overseas _______________________________________ Corp., 400 U.S. 494, 498 (1971). While the evidence is _____ often congruent, or at least overlapping, this is not necessarily so, and a number of cases demonstrate that a single incident of negligence, such as the requirement that a seaman work when he has reported that he was too fatigued to do so, may occur without rendering the ship unseaworthy. Borras v. Sea-Land Serv., Inc., 586 F.2d 881, 888 (1st Cir. ______________________________ 1978); Merchant v. Ruhle, 740 F.2d at 91; Simeon v. T. Smith _________________ ____________________ 11 & Son, Inc., 852 F.2d 1421, 1433 (5th Cir. 1988), cert. ___________ _____ denied, 490 U.S. 1106 (1989); Gosnell v. Sea-Land Serv., ______ ____________________________ Inc., 782 F.2d 464, 467 (4th Cir. 1986); Kokesh v. American _____ __________________ S.S. Co., 747 F.2d 1092, 1094 (6th Cir. 1984). __________ We also find that sufficient evidence was established at trial to support the jury's finding of negligence. A plaintiff's burden of proving causation under the Jones Act is "featherweight". Leonard v. Exxon, 581 F.2d 522, 524 ________________ (5th Cir. 1978), cert. denied, 441 U.S. 923 (1979). ____________ Liability exists if the employer's negligence contributed even in the slightest to the plaintiff's injury. Santana v. __________ United States, 572 F.2d 331, 335 (1st Cir. 1977) (citing _____________ Rogers v. Missouri-Pacific R.R. Co., 352 U.S. 500, 506 __________________________________ (1957)). Here, sufficient evidence was introduced to support the jury's determination that Maritime was negligent in requiring Toucet to continue working despite his claims of exhaustion and inadequate assistance, and that this negligence contributed to Toucet's back injury. Perez v. ________ Maritime Transport Lines, Inc., 661 F.2d 254, 254 (1st Cir. ______________________________ 1979) (employer negligent for not relieving the plaintiff from duty despite the plaintiff's complaints of overwork and inadequate assistance, and that negligence contributed to the plaintiff's injury). 12 B. Improper Hypothetical Question ______________________________ Maritime asserts that the trial court erred by allowing the plaintiff's expert witness, Dr. Jaun Llompart, to answer a hypothetical question that improperly assumed facts not in evidence. Specifically, plaintiff's counsel asked Dr. Llompart to assume, in part, that a hypothetical seaman was injured after pulling a hose and butterworth out of 12 tank openings. Maritime asserts that this assumption was contrary to the evidence introduced at trial, which revealed that Toucet was injured after only 4 tank openings were cleaned. While a hypothetical should include only those facts supported by the evidence, Iconco v. Jensen Constr. Co., 622 ____________________________ F.2d 1291, 1301 (8th Cir. 1980), the record here indicates that sufficient facts existed to support the challenged hypothetical. Each numbered tank had twelve openings, six on the port side and six on the starboard side. (Appellant's App. at 48a; 154a-56a; 162a.) During direct examination, Toucet testified that he and the rest of the team lowered a total of six hoses into the first six openings of tank number one, three on each side. Id. at ____ 51a; 162a. After completing the first six openings, the team proceeded to clean the remaining six openings of tank 13 number one in the same manner. Toucet testified that after __ completing the butterworthing of tank number one he and the team proceeded to the first opening of tank number two. Toucet felt his back "crack" while working on tank number two. On this record, we find that the factual assumptions underlying the plaintiff's hypothetical were fully supported by the evidence. Moreover, Federal Rules of Evidence 703 and 705 place the "full burden of exploration of the facts and assumptions underlying the testimony of an expert witness squarely on the shoulders of opposing counsel's cross-examination." Smith v. Ford Motor Co., 626 F.2d 784, _______________________ 793 (10th Cir. 1980), cert. denied, 450 U.S. 918 (1981). ____________ During its cross-examination of Dr. Llompart, Maritime elected not to explore any perceived discrepancies or inconsistencies relating to the hypothetical, nor did Maritime ever explicitly call the attention of court or counsel to the discrepancy it now asserts. In short, Maritime's assertion of error is without merit. Accordingly, we affirm the trial court's ruling admitting Dr. Llompart's answer to the hypothetical question. 14 C. Remittitur __________ The final issue is the propriety of the trial court's denial of Maritime's motions for a new trial on damages or, in the alternative, for remittitur. Maritime alleges that the jury's $75,000 damage award for what it characterizes as a "BenGay back injury" is unreasonably excessive and unsupported by the evidence. We review the trial court's denial of Maritime's motions for "manifest abuse of discretion." Joia v. Jo-Ja _____________ Serv. Corp., 817 F.2d 908, 918 (1st Cir. 1987) (citing __________ Rivera v. Rederi A/B Nordstjernan, 456 F.2d 970, 975 (1st _________________________________ Cir.), cert. denied, 409 U.S. 876 (1972)), cert. denied, 484 ____________ ____________ U.S. 1008 (1988). In challenging the jury's determination of damages, Maritime assumes a heavy burden. Milone v. _________ Moceri Family, Inc., 847 F.2d 35, 37 (1st Cir. 1988). This ___________________ court has previously observed that, "'[t]ranslating legal damage into money damages . . . is a matter peculiarly within a jury's ken.'" Id. (quoting Wagenmann v. Adams, 829 ___ __________________ F.2d 196, 215 (1st Cir. 1987)). Accordingly, a jury's judgment regarding the appropriate damage award is given wide latitude and will be upheld so long as it does not exceed "'any rational appraisal or estimate of the damages that could be based on the evidence before the jury.'" Id. ___ 15 (quoting Segal v. Gilbert Color Sys., 746 F.2d 78, 81 (1st ___________________________ Cir. 1984)). In making this determination, we view the evidence in the light most favorable to the plaintiff. McDonald v. Federal Lab., Inc., 724 F.2d 243, 246 (1st Cir. ______________________________ 1984) (quoting Betancourt v. J.C. Penny Co., 554 F.2d 1206, ____________________________ 1207 (1st Cir. 1977)). Cast in the appropriate light, we find that the jury's assessment of Toucet's damages is within the "'wide range of arguable appropriateness.'" Milone v. Moceri Family, Inc., ______________________________ 847 F.2d at 40 (quoting Wagenmann v. Adams, 829 F.2d at __________________ 216). In calculating the amount of damages, the jury was instructed to consider lost earnings, as well as pain and suffering. With regard to lost earnings, the evidence indicated that Toucet was unable to work for more than three months after his injury. Although Toucet was pronounced "fit for duty" by his doctor and attempted to resume work as a seaman in December 1987, Toucet testified that he was unable to remain on the job for more than a few days because of his back injury. In terms of pain and suffering, Toucet testified that, up until the time of trial, he continued to suffer pain and discomfort attributable to his injury aboard the Overseas Alaska, even though the injury occurred four _______________ years earlier. 16 Under these circumstances, we conclude that the jury's $75,000 judgment cannot be fairly characterized as "`grossly excessive,'" "`inordinate'" or "`shocking to the conscience'". See McDonald v. Federal Lab., Inc., 724 F.2d _________________________________ at 246 (quoting Grunenthatl v. Long Island R.R. Co., 393 ___________________________________ U.S. 156, 159 n.4 (1968)). Accordingly, we find no abuse of discretion in the trial court's denial of Maritime's motions for a new trial on damages or for remittitur. CONCLUSION CONCLUSION The trial court's orders directing judgment to enter according to the jury's verdict and dismissing Maritime's post trial motions are AFFIRMED. AFFIRMED. 17