Greta MAGNUSSEN, Plaintiff,

v.

YAK, INC., Defendant.

No. C92–1232D.

United States District Court,
W.D. Washington,
at Seattle.

June 22, 1994.

withstanding the verdict or in the alternative, for a new trial. The Court, having considered the motions, memoranda, and affidavits submitted by the parties, and having heard oral argument on this matter, hereby denies the motion for a judgment notwithstanding the verdict and grants the motion for a new trial.

## I

YAK first contends that the Court should grant a motion for a judgment notwithstanding the verdict.[1] The Ninth Circuit recently reiterated the standard by which such a motion must be viewed:

> A JNOV is proper if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict. *Venegas v. Wagner,* 831 F.2d 1514, 1517 (9th Cir. 1987):

*Vollrath Co. v. Sammi Corp.,* 9 F.3d 1455, 1460 (9th Cir.1993). On appeal, the Ninth Circuit reviews this Court's order granting a JNOV *de novo. Id.*

YAK asserts that a JNOV is appropriate because no evidence supports the jury's verdict on Magnussen's negligence claim. According to YAK, the galley floor was proven safe either dry or in the presence of water, Magnussen failed to introduce any evidence showing that oil was on the floor at the time of Magnussen's fall, and consequently, YAK cannot be found negligent. Magnussen argues that the jury could have accepted her theory of the case, *i.e.,* that the negligent act was YAK's failure to provide mats, which she contends would have eliminated her fall. Second, Magnussen contends that the record contains evidence that Magnussen slipped in a pool of liquid. She argues that sufficient evidence exists for the jury to believe that this liquid was oil. Even if this liquid was not oil, a residue of oil on the floor after the cleaning could have created the slippery con-

Jeffrey P. Robinson and Corrie J. Yackulic, Schroeter, Goldmark & Bender, Seattle, WA, for plaintiff.

Michael A. Barcott and Alec W. Brindle, Faulkner, Banfield, Doogan & Holmes, Seattle, WA, for defendant.

## ORDER

DIMMICK, District Judge.

THIS MATTER comes before the Court on defendant's motion for a judgment not-

---

1. The 1991 amendments to the rules drop the designations of "directed verdict" and "judgment notwithstanding the verdict" in favor of "judgment as a matter of law." *See* Comment to the 1991 Amendments to Fed.R.Civ.P. 50. The standard by which such motions are decided remains the same. *See id.* The Court has retained the old terms to be consistent with the parties memorandums.

dition. Magnussen concludes that the JNOV motion should be denied.

■ In light of the above standard, the Court denies the motion for a JNOV. Magnussen testified that she slipped in a pool of liquid and that Rivera wiped the floor where she slipped in big sweeping motions suggesting that he was cleaning up a large quantity of liquid. Rivera's deposition testimony indicated that the only oil that he saw were two small undisturbed drops of oil near where Magnussen slipped. Magnussen's slip occurred near the deep frier where oil or grease could have been present. While contrary evidence was introduced and while Magnussen did not present a particularly strong case, this evidence is sufficient to support the jury's verdict of negligence. Accordingly, YAK's motion for a JNOV is denied.

## II

■ YAK next contends that the Court should order a new trial on the basis of insufficient evidence. The standard used when determining whether a motion for a new trial should be granted is less demanding than that for granting a motion for a judgment notwithstanding the verdict. *Brooktree Corp. v. Advanced Micro Devices, Inc.,* 757 F.Supp. 1088, 1094 (S.D.Cal.1990), *aff'd,* 977 F.2d 1555 (Fed.Cir.1992).

Although the district court's ruling on the alternative motion for new trial involved the exercise of a measure of discretion, a stringent standard applies when the motion is based on insufficiency of evidence. A motion for new trial may be granted on this ground only if the verdict is against the "great weight" of the evidence, or it is quite clear that the jury has reached a seriously erroneous result.

*Digidyne Corp. v. Data General Corp.,* 734 F.2d 1336, 1347 (9th Cir.1984) (citations and internal quotation marks omitted), *cert. denied,* 473 U.S. 908, 105 S.Ct. 3534, 87 L.Ed.2d 657 (1985). In deciding the motion, the Court may weigh the evidence and consider the credibility of the witnesses. *Brooktree,* 757 F.Supp. at 1094.

■ YAK argues that Magnussen's expert conceded that the only way that the galley could be found unreasonably unsafe was in the presence of oil. YAK contends that the jury must have assumed that oil was on the galley floor when Magnussen fell. YAK asserts that the record is devoid of substantial evidence to support this conclusion. Accordingly, YAK concludes that the Court should grant the motion for a new trial.

In response to the motion for a new trial based on insufficiency of the evidence, Magnussen makes the same two assertions as she made to argue against the JNOV. First, she argues that the jury could have accepted her theory of the case, *i.e.,* that the negligent act was YAK's failure to provide mats, which she contends would have eliminated her fall. Pursuant to this theory, Magnussen asserts, YAK is liable regardless of what liquid caused her to slip. Second, Magnussen contends that the record contains evidence that Magnussen slipped in a pool of liquid. She argues that sufficient evidence exists for the jury to believe that this liquid was oil. Even if this liquid was not oil, a residue of oil on the floor after the cleaning could have created the slippery condition. Magnussen concludes that the motion for a new trial should be denied.

While the evidence that Magnussen slipped in a pool of oil was controverted, sufficient evidence was introduced to support the jury's verdict. In such an instance, the Court defers to the jury's verdict. Consequently, the Court denies YAK's motion for a new trial based on insufficient evidence.

## III

Finally, YAK contends that its motion for a new trial should be granted because the verdicts are inconsistent. YAK contends that unless the vessel was unseaworthy, YAK could not have been negligent. Magnussen disagrees and gives two reasons for denying the motion. First, Magnussen contends that the verdicts can be harmonized. Second, Magnussen asserts that, even if the verdicts were inconsistent, YAK invited this error by requesting a jury instruction that required the jury to separately consider the negligence and unseaworthiness claims.

## A

■ Magnussen's second assertion—that YAK invited error by requesting an instruction that the negligence claim was separate from the unseaworthiness claim—can easily be dismissed. As Magnussen claims, negligence and unseaworthiness are discrete claims that are to be analyzed separately. *See Usner v. Luckenbach Overseas Corp.,* 400 U.S. 494, 498, 91 S.Ct. 514, 517, 27 L.Ed.2d 562 (1971). The two causes of action require different levels of causation. To succeed on her unseaworthiness claim, Magnussen had to show that the vessel's unseaworthiness played a substantial part in bringing about Magnussen's injuries. *See* Jury Instruction No. 16. To prevail on her negligence claim, Magnussen need only show that YAK's negligence was a slight cause of her harm. *See* Jury Instruction No. 12. Because the causation required to prove each claim differs and because the claims are discrete and separate, YAK did not invite error by requesting that the jury be instructed to that effect. Moreover, the cases cited by Magnussen in support of her invited error theory, *United States v. Guthrie,* 931 F.2d 564, 567 (9th Cir.1991), and *999 v. C.I.T. Corp.,* 776 F.2d 866, 870 (9th Cir.1985), both discuss the situation in which the party challenged the instruction that it had submitted to the court. In this case, YAK does not challenge the submitted instruction; rather, YAK asserts that verdicts reached pursuant to those instructions were inconsistent.

## B

The final issue is whether the verdicts are inconsistent. The parties agree that inconsistent special verdicts must be upheld unless "it is impossible 'under a fair reading' to harmonize the answers." *Omar v. Sea–Land Serv., Inc.,* 813 F.2d 986, 991 (9th Cir.1987). If the Court is unable to harmonize the answers, however, a new trial may be granted. *Floyd v. Laws,* 929 F.2d 1390, 1396 (9th Cir.1991).

The parties agree that negligence and unseaworthiness are separate claims. The parties, however, cite two divergent lines of cases discussing whether a verdict for the defendant on an unseaworthiness claim is inconsistent with a negligence claim in favor of the plaintiff. YAK relies on a Second Circuit case, *Bernardini v. Rederi A/B Saturnus,* 512 F.2d 660 (2d Cir.1975), while Magnussen relies on cases from the First Circuit, *Toucet v. Maritime Overseas Corp.,* 991 F.2d 5 (1st Cir.1993), Fifth Circuit, *Brunner v. Maritime Overseas Corp.,* 779 F.2d 296 (5th Cir.), *cert. denied,* 476 U.S. 1115, 106 S.Ct. 1971, 90 L.Ed.2d 655 (1986), and Sixth Circuit, *Kokesh v. American Steamship Co.,* 747 F.2d 1092 (6th Cir.1984).

In *Bernardini,* the plaintiff was injured when he slipped on oil or grease on the deck of defendant's vessel. The trial judge instructed the jury that a finding of unseaworthiness was a precondition to finding negligence. In spite of this instruction, the jury found for the plaintiff on his negligence claim while finding for the defendant on the plaintiff's unseaworthiness claim. The defendant moved for a JNOV or for a new trial, and the trial court denied the motion. The defendant appealed. *Bernardini,* 512 F.2d at 661–63.

In reversing the trial court, the Second Circuit Court of Appeals distinguished operational negligence, which could lead to a finding of negligence in the absence of a finding of unseaworthiness, from failure to exercise due care in providing a safe work place, which would require a breach of a duty as a prerequisite to finding unseaworthiness. In holding that the verdicts were inconsistent, the Court reasoned as follows:

> Recently in *Conceicao v. New Jersey Export Marine Carpenters, Inc.,* 508 F.2d 437 (2d Cir.1974), *cert. denied,* [421] U.S. [949], 95 S.Ct. 1680, 44 L.Ed.2d 102 (1975), we were able to reconcile the jury's finding that the Vessel was not unseaworthy with its finding that the accident was caused by the Shipowner's negligence. We relied upon *Usner v. Luckenbach Overseas Corp.,* 400 U.S. 494, 91 S.Ct. 514, 27 L.Ed.2d 562 (1971) for the proposition that a single separate act may constitute operative negligence, though it may not necessarily create a condition of unseaworthiness. In *Conceicao,* the single act was the overloading of a storage bin that itself was sufficiently sturdy to bear a normal load. In *Usner,* the act was the premature and

sudden release of a fall by a winchman causing the sling to strike a longshoreman. It is true that in *Conceicao,* we went somewhat further than the Supreme Court did in *Usner,* for in *Usner* the single act of negligence was performed by a longshoreman and not by a member of the crew, while in *Conceicao,* the operative negligence was the fault of one of the ship's officers.

In *Henry and Braye v. A/S Ocean & John P. Pederson & Sons,* 512 F.2d 401 (2 Cir.1975), a panel of this court, confronted with a similar finding on a special verdict of negligence but no unseaworthiness, was able to reconcile the alleged inconsistency because of the narrow charge on unseaworthiness there given by the trial court, which instructed that the jury could find unseaworthiness only if it found that plaintiff's injuries were caused by defective equipment. The panel held that there was no inconsistency because the jury might have concluded "that other claims (e.g., failure to reposition the booms properly) could only be resolved on a negligence theory." *Id.* at 405. In the case on appeal we have no single act of operative negligence that could account for the verdict.

The only negligence with which the Shipowner can be charged here derives from a breach of duty on the part of the First Officer Stahl. It can be argued that Stahl was under a duty to keep the deck clean and that his knowledge of the slippery condition of the deck was sufficient to impose upon him a duty, with which he failed to comply, either to see that the deck was cleaned or to warn the plaintiff not to traverse that area. Yet the very statement of the breach of duty constituting negligence indicates that it would be a breach of duty for failure to correct or to warn of a *condition,* the condition being a slippery deck. This is a classic illustration of unseaworthiness, independent of negligence. To recapitulate, if the deck was not in an unseaworthy condition, then the Shipowner bore no duty to eliminate an unseaworthy condition or to warn the longshoreman plaintiff of the danger. This is the exceptional case where a breach of

duty can be constructed only if the deck was in an unseaworthy condition.

For the most part, as Gilmore & Black have pointed out, "unseaworthiness has virtually swallowed up negligence. G. Gilmore & C. Black, *Admiralty* § 6–55 at 364 (1957). An exception may exist, as this court found in *Conceicao* and in *A/S Ocean, supra,* when an isolated act of operative negligence renders a shipowner liable to an injured plaintiff without rendering his ship unseaworthy. In this case, we can find no single act of negligence which did not of itself create a condition longlasting enough to constitute unseaworthiness.

While special verdicts should be reconciled wherever possible, allowing the jury's right in Judge Weinfeld's words "to an idiosyncratic position," *Malm v. United States Lines,* 269 F.Supp. 731 (S.D.N.Y.), *aff'd without opinion,* 378 F.2d 941 (2d Cir.1967), there must be a limit where, as here, the special verdicts are quite irreconcilable, the plaintiff's case is tenuous, and the suspicion strong that the judgment was predicated upon confusion or sympathy or both.

*Bernardini,* 512 F.2d at 663–64 (other citations omitted). The Court reversed and remanded for a new trial. *Id.* at 664.

■ The Court agrees with YAK that *Bernardini* is directly on point with the instant case. In this case, as in *Bernardini,* the plaintiff does not complain that her injuries were caused by an isolated act of operational negligence such as the overloading of a storage bin (as in *Conceicao* ) or the premature and sudden release of a fall by a winchman (as in *Usner* ). Rather, Magnussen's claim of negligence and unseaworthiness, like those of the plaintiff in *Bernardini,* arose from a condition—in this case, that of the galley floor. YAK's quotation from *Bernardini* is appropriate: "To recapitulate, if the deck was not in an unseaworthy condition, then the Shipowner bore no duty to eliminate an unseaworthy condition or to warn the longshoreman plaintiff of the danger. This is the exceptional case where a breach of duty can be constructed only if the deck was in an unseaworthy condition." *Bernardini,* 512 F.2d at 664.

Magnussen attempts to avoid the result dictated by *Bernardini* by arguing that the negligent act was YAK's failure to provide mats. She cites to *Conceicao* and *Usner* for the proposition that in such a case, negligence may be present even in the absence of unseaworthiness. As the evidence showed, however, unless oil was present, the coefficient of friction of the galley floor without mats was nearly the same as it would have been with mats. Thus, unless the jury found oil on the floor, YAK could not have been negligent. If oil was on the floor, then the floor was unfit for its intended purpose. In other words, the floor was unseaworthy.

In addition, Magnussen attempts to distinguish *Bernardini*. Magnussen correctly notes that the trial judge in that case instructed the jury that it must find unseaworthiness as a precondition to finding negligence. *See Bernardini*, 512 F.2d at 663 & n. 4. While the jury in the instant case, unlike the jury in *Bernardini*, was instructed that the claims of negligence were separate from those of unseaworthiness, the standard of causation for each claim is different. The differing standards of causation would allow a verdict of liability on the negligence claim without a corresponding verdict of liability for unseaworthiness. Thus, the jury had to be instructed to consider each claim separately. In addition, as YAK asserts, the holding in *Bernardini* was not premised on the trial court's instruction. Magnussen also argues that her claims, unlike those in *Bernardini*, were based on different allegations. It appears to the Court, however, that both of Magnussen's claims were based on the same facts and both were premised on YAK's failure to provide mats.

Magnussen also cites cases from the First, Fifth, and Sixth Circuits that have not followed *Bernardini*. In *Toucet*, the First Circuit was presented with the question of whether a verdict for plaintiff on his negligence claim was inconsistent with a verdict for defendant on the unseaworthiness claim. Before discussing the substance of the appeal, the Court held that the defendant waived the issue by failing to raise the issue before the jury was discharged. *Toucet*, 991 F.2d at 9. Thus, any discussion of inconsistent verdicts is dicta. Moreover, in upholding the verdict, the *Toucet* Court relied upon the operational negligence rationale. *See id.* ("[A] number of cases demonstrate that a single incident of negligence, such as the requirement that a seaman work when he has reported that he was too fatigued to do so, may occur without rendering the ship unseaworthy."). As discussed above, in the instant case no act of operational negligence exists. Thus, *Toucet* is distinguishable.

In *Kokesh*, the plaintiff was injured when he slipped on the deck of a vessel that had been flooded by water polluted with raw sewage. He sued the vessel owner for negligence and unseaworthiness, and the jury was instructed to consider each claim separately. The jury concluded that the vessel was seaworthy but that the ship owner was negligent and the defendant appealed. *Id.* at 1093–94.

On appeal, the Sixth Circuit held that opposite verdicts on negligence and unseaworthiness were not inconsistent. *Kokesh*, 747 F.2d at 1094. The Court reasoned that the claims of negligence and unseaworthiness were distinct claims and that therefore, the jury could find negligence without also finding unseaworthiness. *Id.* Without citation to authority, the Court discussed the verdict as follows:

A failure to exercise ordinary care may or may not result in an unfit vessel. The jury could have concluded from the proof that although the defendant did not exercise ordinary care in allowing the deck to be made slippery by overflow from the vessel's ballast tanks, the flooding of the deck did not make the vessel unseaworthy. Indeed, there was testimony that the deck's safety had been enhanced by non-skid paint, and it is reasonable to conclude from its verdict on the unseaworthiness count that the jury believed the defendant's proof in this regard. At the same time, the jurors may have believed that the deck's wetness contributed to Kokesh's fall, compelling them to find that his injury was caused by the Company's negligence.

*Id.* In a brief footnote, the Court distinguished *Bernardini* because the trial judge in *Bernardini* had instructed the jury that

unseaworthiness was a precondition to negligence. *Id.* at 1094 n. 1.

In *Brunner*, the plaintiff was injured when he slipped on oil that had been spilled on the deck. He brought an action against the owner of the vessel, alleging negligence and unseaworthiness. After being instructed that the two causes of action were separate theories of recovery, the jury returned a verdict for the defendant on the unseaworthiness claim and for the plaintiff on the negligence claim. The defendant moved for a new trial, urging that the verdicts were inconsistent. The trial court denied the motion, and defendant appealed. *Brunner*, 779 F.2d at 297.

Although noting that the two verdicts were illogical, the Fifth Circuit, relying solely on *Kokesh*, affirmed.

In the present case, the jury was instructed that these were two separate theories of recovery. The jury could well have concluded that the shipowner was negligent for allowing oil on the deck of his ship, but that oil on the deck of the ship did not render the vessel unfit to go to sea. The jury has the power to determine what facts constitute unseaworthiness just as it has the power to decide if there was negligence.

Appellants urge that the jury's answers are illogical because a "yes" answer to the negligence interrogatory necessarily found oil on the deck, while a "no" answer to the unseaworthiness interrogatory necessarily found no oil on the deck. However, as Emerson noted, "A foolish consistency is the hobgoblin of little minds." Although these answers may not achieve legal nicety, they are not irreconcilable. We do not have the right to second guess a jury that may decide a small oil spill on a deck does not necessarily make an 80,000 ton tanker unseaworthy even if the spill got there negligently.

*Brunner*, 779 F.2d at 299 (footnote omitted). While acknowledging that *Bernardini* had held to the contrary, the *Brunner* court made no attempt to distinguish or criticize that decision.

This Court has quoted extensively from the cases to show the exact reasoning applied by the courts. From these quotations, it is clear that the *Bernardini* court more thoroughly analyzed the issue and reached the correct result. In finding the verdicts consistent, the courts in both *Kokesh* and *Brunner* focussed on whether a substance spilled onto the vessel's deck rendered the entire vessel unseaworthy. *See Brunner*, 779 F.2d at 299 ("We do not have the right to second guess a jury that may decide a small oil spill on a deck does not necessarily make an 80,000 ton tanker unseaworthy even if the spill got there negligently."); *Kokesh*, 747 F.2d at 1094 ("The jury could have concluded from the proof that although the defendant did not exercise ordinary care in allowing the deck to be made slippery by overflow from the vessel's ballast tanks, the flooding of the deck did not make the vessel unseaworthy."). The question to be resolved, however, is not whether a foreign substance on the deck renders the entire vessel unseaworthy, but whether the oil renders the deck of the vessel unseaworthy. *See* Jury Instruction No. 14 (defining owner's duty to maintain "the ship, and all decks and passageways, appliances, gear, tools, parts and equipment of the vessel in a seaworthy condition").

The question of whether the galley floor in the instant case was seaworthy requires inquiry into whether it was "reasonably fit for its intended use." *See id.* A finding that the deck was seaworthy precludes a finding of negligence, which was defined as "the doing of something that a reasonably prudent person would not do, or the failure to something that a reasonably prudent person would do, under like circumstances." *See* Jury Instruction No. 10. If the deck was seaworthy without mats, a reasonably prudent person would not supply mats. As in *Bernardini*, "[w]hile special verdicts should be reconciled wherever possible, allowing the jury's right in Judge Weinfeld's words 'to an idiosyncratic position,' there must be a limit where, as here, the special verdicts are quite irreconcilable, the plaintiff's case is tenuous, and the suspicion strong that the judgment was predicated upon confusion or sympathy or both." *Bernardini*, 512 F.2d at 664 (citations omitted).

## IV

In conclusion, the motion for a JNOV is DENIED, the motion for a new trial based on lack of evidence is DENIED, and the motion for a new trial based on inconsistent verdicts is GRANTED. To accommodate the parties' request for an early trial date, this case is hereby TRANSFERRED to the Honorable Walter T. McGovern, United States District Judge, for trial. The trial is set for August 4, 1994, at 9:30 a.m. in the ninth floor courtroom.

The Clerk of the Court is directed to send copies of this Order to all counsel of record.