Paul J. CUNNINGHAM, Plaintiff,

v.

WILLIAMS TELECOMMUNICATIONS SYSTEMS, INC. and Joseph Grosso, Defendants.

Civil Action No. 93–40074–NMG.

United States District Court, D. Massachusetts.

June 10, 1996.

John C. Carleen, Charlestown, MA, for Paul J. Cunningham.

Ilene Robinson, Sullivan & Worcester, LLP, Boston, MA, for Williams Telecommunications Group, Inc., Joseph Grosso.

## MEMORANDUM AND ORDER

GORTON, District Judge.

Pending before this Court are various motions filed by all parties since judgment was entered in this case on December 7, 1995. For the reasons set forth below, the cross-motions filed by plaintiff and defendants to amend the judgment will be denied and plaintiff's motion for attorney's fees will be allowed in part, and denied in part.

## I. BACKGROUND

Plaintiff, Paul J. Cunningham ("Cunningham"), brought this action alleging 1) age discrimination in employment in violation of M.G.L. c. 151B and the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.* against his former employer, Williams Telecommunications Systems, Inc. ("WilTel"), and 2) tortious interference with contractual relations against a

former co-worker at WilTel, Joseph Grosso ("Grosso").[1]

On November 1, 1995, a jury returned a verdict in favor of plaintiff on his state law claim of age discrimination and awarded $30,000 in damages against defendant WilTel. The jury also found for plaintiff on his tortious interference claim against defendant Grosso and awarded $66,000 in damages. Judgment was entered on December 7, 1995.

On December 15, 1995, plaintiff filed a motion to amend the judgment pursuant to Fed.R.Civ.P. 59(e) so as to hold both defendants jointly and severally liable for the total damage award of $96,000. Plaintiff argues that "[i]t is apparent ... that the jury has tried to apportion the blame/damages between the two defendants by awarding to the plaintiff a portion of his damages from Wiltel, and a portion of his damages from Grosso."[2] Plaintiff's Motion to Amend Judgment at ¶ 4.

Defendants subsequently filed their own motion to alter or amend the judgment to provide that 1) defendants be held jointly and severally liable for the first $30,000 awarded to plaintiff and 2) the first $30,000 recovered by plaintiff against either defendant be extinguished from the remaining judgment against the other defendant. Defendants argue that because plaintiff's damages on either count consisted solely of lost wages due to his termination, plaintiff should be permitted only a single recovery for the harm that he suffered.

A hearing was held on the issue of damages on May 3, 1996. At that time, both plaintiff and defendants agreed that 1) the only evidence of damages introduced at trial on either count was evidence of plaintiff's lost wages, 2) there was no evidence of damages on the tortious interference claim that was separate from the evidence of damages on the age discrimination claim, and 3) the damages on the age discrimination claim must therefore necessarily be the same as the damages on the tortious interference claim. Plaintiff again insisted that the jury apportioned the damage award between the two defendants. In support of that theory, plaintiff argued that there was no place on the special verdict form where the jury could have indicated that they intended only one total damage award.[3]

## II. DISCUSSION

### A. Evidence of Damages

This Court reviews the evidence of damages presented at trial in the light most favorable to the prevailing party, plaintiff Cunningham, and is mindful that a jury's assessment of damages is given great deference. *Dopp v. Pritzker*, 38 F.3d 1239, 1249 (1st Cir.1994). Such an award will not be overturned unless it is shown to exceed any rational appraisal or estimate of the damages that could be based upon the evidence before the jury. *Id.* A jury may not, however, render a verdict based upon speculation or guesswork. *Id.*

The evidence of damages introduced at trial may be summarized as follows. On May 6, 1991, Cunningham was hired by WilTel as

---

1. Plaintiff also brought state and federal claims of age discrimination against Grosso, a claim of negligent supervision in violation of the covenant of good faith and fair dealing against WilTel, and claims of wrongful termination of an at-will employee against both Grosso and WilTel. Those claims were all dismissed at the summary judgment stage of the case.

2. Plaintiff's grounds for his argument that the jury apportioned damages between the two defendants are not entirely clear. Plaintiff alleges that, with respect to *both* the age discrimination and tortious interference claims, this Court instructed the jury that damages would consist of the difference between what the plaintiff would have earned at WilTel from the date of his termination until the date of trial, less what he actually earned during that same time period. Plain-

tiff's Motion to Amend Judgment at ¶ 3. Plaintiff is, however, incorrect. While this Court did instruct on the age discrimination claim as alleged, on the tortious interference count, it simply instructed the jury that if they found for plaintiff against defendant Grosso, they could "award damages to reasonably compensate Mr. Cunningham for the actual damages that [they] find, by a preponderance of the evidence, were caused by Mr. Grosso's action."

3. The Court notes, however, that at the time of trial, neither party proposed a specific jury instruction that would have addressed the issue, nor objected to 1) the jury instructions on the issue of damages, 2) the verdict form with respect to that issue, or 3) any alleged inconsistency of the verdict itself.

a sales manager. Pursuant to a written offer of employment, Cunningham was to receive a monthly salary of $8,000 for the first six months of his employment.[4] After that period, the parties had an understanding that Cunningham would be switched to a compensation plan similar to that of other sales managers within the company. Cunningham testified that he likely would have received an annual base salary of $30,000 to $50,000, plus commissions. Plaintiff further testified that the average sales manager would earn between $75,000 and $90,000 per year.

At the end of his six month contract, plaintiff was terminated. It took him approximately five months to find a new job. On March 30, 1992, Cunningham accepted an offer of employment from Ericsson Business Communications to be a sales executive. In the years 1992 to 1995 (through the date of the trial) he earned $40,865, $66,388, $83,160 and $58,154, respectively.

Plaintiff relies on the testimony of Edward Lavin, the Chief Executive Officer of WilTel, to support his claim that the jury's finding of $96,000 in total damages is warranted. Lavin testified that plaintiff could have expected to earn over $100,000 per year as a sales manager. By contrast, Robert Andresen, the Regional Vice President of Sales for the Northeast Region, testified that he thought $96,000 per year was more than Cunningham could have anticipated. In addition, Merritt testified that plaintiff could have expected to make between $40,000 and $50,000 per year, plus commissions.

### B. Cross Motions to Amend Judgment

Both parties essentially allege in their respective motions to amend judgment that, because the jury's verdict consisted of two different damage awards based upon the same harm and the same body of evidence, this Court should amend the jury's award in order to obtain consistency in the verdict. It is significant, however, that neither party objected to the verdict prior to the jury's discharge. In fact, plaintiff did not assert that the jury improperly apportioned damages until November 13, 1995, twelve days after the jury was discharged, when he filed his initial motion to amend the judgment.[5] Defendants did not file their motion to amend until December 19, 1996.

■ The First Circuit Court of Appeals has made it clear that a party who fails to object to any alleged verdict inconsistency or defect after the verdict is read and before the jury is dismissed waives its right to object to an inconsistent verdict. *See Toucet v. Maritime Overseas Corp.*, 991 F.2d 5, 8 (1st Cir.1993); *Pontarelli v. Stone*, 930 F.2d 104, 114–15 (1st Cir.1991); *Austin v. Lincoln Equipment Associates, Inc.*, 888 F.2d 934, 938 (1st Cir.1989). This is because the only efficient time to cure any alleged inconsistency is after the jury announces its verdict and before it is excused. *Toucet*, 991 F.2d at 8. In this case, had either counsel raised the issue in a timely fashion, i.e. after the verdict was recorded and before the jury was discharged, this Court could have considered the alleged inconsistency and determined whether to reinstruct the jury and return it for further deliberations. After the jury was discharged without objection from either counsel, however, the parties effectively waived their rights to argue that the jury's separate award of damages on each count was inconsistent.

■ Furthermore, even if the parties had timely raised their objections to the verdict, this Court concludes that, viewing all of the evidence and inferences flowing therefrom in the light most favorable to the plaintiff, the jury's damage awards were not inconsistent. In reaching that conclusion, this Court is guided by the principle that, "[w]hen a special verdict form results in apparently conflicting findings, a court has a duty under the Seventh Amendment [of the Constitution] to harmonize the answers if it is at all

---

4. Cunningham testified that when he initially received that written offer in late April, 1991, he wrote in "$96,000" at the bottom and faxed it back to the President and Chief Operating Officer of WilTel, George Merritt. Merritt never responded to or addressed plaintiff's notation.

5. Because judgment was not entered until December 7, 1995, plaintiff renewed his motion to amend the judgment on December 15, 1996. The timing of his motion is, however, irrelevant because it was not made prior to the jury's discharge.

possible under a fair reading." *Toucet*, 991 F.2d at 8.

In the instant case, the Court finds that, notwithstanding the plaintiff's own admission that he presented no separate evidence of damages on the tortious interference claim, evidence was introduced sufficient to support the jury's separate finding of damages on that claim. From that evidence a reasonable jury could have found that, during plaintiff's six month employment at WilTel,

1) defendant Grosso made disparaging comments about the plaintiff's age to various employees at WilTel,

2) Grosso was "very close" to Leonard London, the individual who ultimately made the decision to terminate plaintiff's employment and who "relied heavily" upon Grosso,

3) due to the closeness of his relationship with London, Grosso influenced London's decision to terminate plaintiff, and

4) Grosso took actions (such as removing equipment from the plaintiff's control and reassigning personnel from plaintiff's division) that interfered with the plaintiff's ability to earn commissions and thus affected his overall job performance.

Based upon that collective evidence, a reasonable jury could have awarded damages against WilTel for the termination of plaintiff due to age discrimination and made a separate award of damages against Grosso based upon his tortious interference with Cunningham's employment contract. To the extent that defendants contend that the jury's award of damages necessarily constitutes impermissible double recovery, this Court disagrees.

For the foregoing reasons, the parties' cross-motions to amend the judgment will, therefore, be DENIED.

## C. *Plaintiff's Motion for Attorney's Fees*

Pursuant to M.G.L. c. 151B, § 9, plaintiff has moved for attorney's fees and expenses in the amount of $27,524.25. That statute provides, in pertinent part, that "[i]f the court finds for the petitioner it shall ... award the petitioner reasonable attorney's

fees and costs unless special circumstances would render such an award unjust."

 The amount of a reasonable attorney's fee awarded on the basis of that statute "is largely discretionary with the judge, who is in the best position to determine how much time was reasonably spent on a case, and the fair value of the attorney's services." *Fontaine v. Ebtec Corp.*, 415 Mass. 309, 324, 613 N.E.2d 881 (1993). The basic measure of a reasonable attorney's fee is a "fair market rate for time reasonably spent preparing and litigating a case...." *Id.* at 326, 613 N.E.2d 881. In determining what is reasonable, this Court considers factors such as 1) the nature of the case and issues presented, 2) the time and labor required, 3) the amount of damages involved, 4) the result obtained, 5) the experience, reputation and ability of the attorney, and 6) the usual price charged for similar services by other attorneys in the same area. *Id.* at 325 (citation omitted).

In this case, plaintiff succeeded on two out of the three counts that were tried before a jury. The issues at trial were not particularly complex and the determinations of liability raised no novel issues of law. The Court notes that, prior to trial, plaintiff neglected to identify his expert witnesses in a timely manner. As a result, plaintiff was precluded from introducing any expert testimony at trial, including any evidence of front pay damages. Plaintiff also requested a jury instruction on emotional distress damages, despite the fact that he failed to plead or otherwise put defendants on notice that such damages were being sought. Plaintiff's request was subsequently denied and evidence of emotional distress damages was excluded. Plaintiff further failed to follow appropriate rules regarding subpoenas and, consequently, was unable to obtain business documents to support plaintiff's claim for damages. Finally, the Court notes that five counts of plaintiff's Complaint were previously dismissed on defendants' motion for summary judgment.

 Upon review of the overall result obtained by plaintiff in relation to the total number of attorney hours spent on the litigation, this Court concludes that the plaintiff was less than unqualifiedly successful during

the course of the entire litigation. Because it would be impracticable, however, in this case to attempt to identify and separate out the time and effort of plaintiff's attorney that was successfully expended from his total time, the Court finds that an award of one-half of plaintiff's requested fees for attorney's time ($12,256.88), plus expenses of $3,010.50 for a total of $15,267.38 is fair and appropriate.

The plaintiff's motion for attorney's fees will, therefore, be ALLOWED, in part, and DENIED, in part.

### ORDER

For the foregoing reasons,

1. Plaintiff's Motion to Amend Judgment is DENIED;

2. Defendants' Motion to Alter or Amend Judgment is DENIED; and

3. Plaintiff's Motion for Attorney's Fees is ALLOWED in part and DENIED in part. An award of $15,267.38 shall be made to plaintiff for attorney's fees incurred in litigating this matter.

So Ordered.